Frederick S. TANNER

v.

## The TOWN COUNCIL OF the TOWN OF EAST GREENWICH et al.

No. 2002–677–Appeal.

Supreme Court of Rhode Island.

July 18, 2005.

Robert D. Wieck, Providence, for Plaintiff.

Peter A. Clarkin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

SUTTELL, Justice.

"A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps, both. Knowledge will forever govern ignorance; And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives."[1]

In a democratic society, the gateway to such knowledge is access to information and the adequate means of acquiring it. This principle has been recognized by the General Assembly, and is embodied in the Open Meetings Act, G.L. 1956 chapter 46 of title 42.

---

1. James Madison, *The Complete Madison, His Basic Writings* 337 (Letter to W.T. Berry, August 4, 1822) (1953).

In this case, defendants, the Town Council of the Town of East Greenwich and its five members, in their official capacity,[2] (hereinafter collectively referred to as "town council" or "town"), appeal from a grant of summary judgment and an award of attorney's fees in favor of plaintiff, Frederick S. Tanner, on his assertion that the town council appointed three people to the zoning board of review and planning board in violation of the Open Meetings Act (OMA). For the reasons set forth herein, we affirm the summary judgment entered in the Superior Court in favor of plaintiff, but vacate the award of attorney's fees.

### Facts and Procedural History

On October 19, 2001, the town posted notice of a town council meeting scheduled for October 23, 2001. The only agenda item was listed as: "Interviews for Potential Board and Commission Appointments," followed by the names of six potential appointees beside their respective scheduled interview times, with each interview scheduled twenty minutes apart. At the meeting on October 23, 2001, however, after conducting the interviews, the town council also voted to appoint one person as an alternate to the town zoning board, voted to appoint one person to the position of alternate to the planning board, and voted to promote one person from an alternate to a full member of the planning board. Although the minutes indicated

that Councilman Donald Tufts "expressed discomfort at proceeding to vote," the other council members apparently felt that proper notice of the meeting had been given and elected to proceed with the appointments. Mr. Tufts voted against two of the appointments and abstained from the third vote.

On November 14, 2001, counsel for plaintiff informed the town that he would file a complaint against the town for violating the OMA. The next day the town council posted notice of a meeting scheduled for November 19, 2001. The notice included as an agenda item, "Boards and Commissions Appointments." However, the minutes of the November 19, 2001 meeting reflect that "Mr. Bradley does not want to address this issue tonight and would like to see it on the next regular meeting and have it listed as 'decision on Board and Commission appointments.' Consensus is to continue this item to the next agenda for decision." Indeed, the notice posted on November 21, 2001, listed "Decision on Board and Commission appointments" on the agenda of the November 26, 2001 town council meeting. At that meeting, the council reaffirmed all three appointments previously made on October 23, 2001.[3] On November 27, 2001, plaintiff filed the present action alleging that the town council had violated the OMA in making the original appointments at the October 23, 2001 meeting.[4] In his complaint, plaintiff re-

**2.** The members of the town council named as defendants are Marilyn J. Kiesel, Sharyn C. Iannuccilli, Vincent D. Bradley, Barry M. Dressler, and Donald W. Tufts.

**3.** The plaintiff has not challenged the validity of the November 26, 2001 appointments.

**4.** From the record, it appears that plaintiff effectuated service of process on November 21, 2001; however, it appears that the complaint was not filed until November 27, 2001.

Under Rule 4(1) of the Superior Court Rules of Civil Procedure, an action filed against a defendant shall be dismissed without prejudice if the plaintiff has not served the summons and complaint upon that "defendant within 120 days *after* the commencement of the action" and if the plaintiff "cannot show good cause why such service was not made within that period." (Emphasis added.) While we recognize that "rules relating to service of process are to be followed and construed strictly since [absent waiver] juris-

quested that the Superior Court enter judgment in his favor, enjoin the town from permitting the appointed individuals from acting in their newly appointed capacities, declare the October 23, 2001 votes null and void, impose a civil fine of $5,000 against the town council, and award attorney's fees and costs to plaintiff. Subsequently, both sides filed cross-motions for summary judgment. On February 25, 2002, the hearing justice found that the failure of the town council to specify in its notice for the October 23, 2001 meeting that it would be voting on commission and board appointments was a violation of the OMA, and granted plaintiff's motion for summary judgment and denied the town's motion for summary judgment. The hearing justice found that in posting the notice stating that "the agenda would concern interviews for potential board and commission appointments, [the town council was] not telling the public that the meeting's agenda would concern electing or voting on board and commission appointments." The hearing justice reserved ruling on the issue of remedy, indicating that there were genuine issues of material fact about "whether or not attorney's fees and in what amount are reasonable" and "whether or not the conduct was willful."

On May 24, 2002, a hearing was held before the same Superior Court justice on the appropriate remedy for the town's OMA violation. The only witness to testify was Councilman Tufts. He testified that he was "surprise[d]" that other members of the town council intended to vote on the appointments because the town council's "normal posting of meetings and the way our notice of meetings was usually worded, it would be clear whether we would be voting on an item or not; and this was not clear." He said he also was aware of the fact that members of the town zoning board wanted an opportunity to express their opinion about the proposed appointment of Debra Zarrella, the wife of a local developer and builder, as an alternate to the zoning board. Members of the zoning board were unable to attend the October 23, 2001 council meeting because the council meeting had been scheduled at the same time as the zoning board's meeting that night. Mr. Tufts also testified that the meeting was held at an "unusual time" in an "unusual place," and that the town solicitor was not present, nor were any members of the press or public.

At the conclusion of the hearing, the hearing justice found that the town had not demonstrated any "special circumstances" that would allow it to avoid paying plaintiff's attorney's fees. She awarded plaintiff the sum of $11,193.89, the full amount of attorney's fees and costs requested, noting that the town continued to maintain that it did not violate the open meetings law at its October 23, 2001 meeting even though the town held a subse-

diction of the court over the person of a defendant is dependent upon proper service having been made," *Shannon v. Norman Block, Inc.*, 106 R.I. 124, 130, 256 A.2d 214, 218 (1969), in the present case we have no need to address this issue as defendants answered, appeared, and defended on the merits and failed to raise the issue of insufficiency of service of process. *See* Super. R. Civ. P. 12(h) ("[a] party waives all defenses and objections which the party does not present either by motion as hereinbefore provided or, if the party has made no motion, in the party's answer" except for certain enumerated defenses that do not include insufficiency of service of process); *Mack Construction Co. v. Quonset Real Estate Corp.*, 84 R.I. 190, 194, 122 A.2d 163, 164 (1956) ("Inasmuch as it is well settled that by a general appearance a defendant submits himself to the jurisdiction of the court, any failure to serve him with process becomes immaterial."); 1 Kent, *R.I. Civ. Prac.* § 12.2 at 109 (1969) ("a defendant who simply answers to the merits of a claim thereby consents to the jurisdiction of the court").

quent meeting with proper notice to reaffirm the appointments. Conversely, the hearing justice denied plaintiff's motion to impose a civil fine. She found that plaintiff had not met his burden of demonstrating that the town willfully or knowingly violated the OMA. The hearing justice specifically noted that even Mr. Tufts, the only dissenting member of the town council and only witness to testify, did not believe that the council was violating the OMA in voting on the appointments at the October 23 meeting.

On appeal, the town proclaims four assignments of error that it contends warrant reversal of the judgment entered in favor of plaintiff, vacation of the award of attorney's fees, and entry of judgment in its favor. Specifically, it asserts: (1) that plaintiff lacks standing to bring the lawsuit; (2) that the action by the town council to appoint the same people at a second meeting rendered the lawsuit moot; (3) that the original appointments made on October 23, 2001, did not violate the OMA; and (4) that the award of attorney's fees was improper. We shall proceed to address these issues.

## Standard of Review

■■■■ We review *de novo* a Superior Court grant of summary judgment, and will affirm the judgment only if, after reviewing the evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Roe v. Gelineau*, 794 A.2d 476, 481 (R.I.2002). Moreover, "a litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I.

2005) (quoting *D'Allesandro v. Tarro*, 842 A.2d 1063, 1065 (R.I.2004)).

■■■■ In addition, in the present case we are required to scrutinize the extent to which the town complied with the OMA. We review questions of statutory interpretation *de novo*. *Interstate Navigation Co. v. Division of Public Utilities & Carriers of Rhode Island*, 824 A.2d 1282, 1287 (R.I. 2003). The determination of whether the October 23, 2001 agenda and vote violated the notice requirements of the OMA presents a mixed question of law and fact. On review, " '[a] trial justice's findings on mixed questions of law and fact are generally entitled to the same deference as the justice's findings of fact.' " *Cummings v. Shorey*, 761 A.2d 680, 684 (R.I.2000); *Hawkins v. Town of Foster*, 708 A.2d 178, 182 (R.I.1998). However, when the facts before a trial court essentially are undisputed and the controversy involves questions of law for the court to consider, the court's judgment carries no presumption of correctness. Because no material facts are disputed and this appeal focuses on the application of the law to the facts, no presumption of correctness is accorded to the hearing justice's judgment about the OMA violation. Therefore, we review *de novo* the application of the law to the facts of this case. *See DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 444, 399 A.2d 1229, 1232 (1979) ("the legal significance of undisputed facts is to be determined by this court"); *Kennedy v. Providence Hockey Club, Inc.*, 119 R.I. 70, 77, 376 A.2d 329, 333 (1977) (stating that in reviewing a trial court's grant of a defendant's motion for summary judgment in a negligence action "where the facts suggest only one reasonable inference, the trial justice may properly treat the question as a matter of law"). "When construing a statute 'our ultimate goal is to give effect to the purpose of the act as intended by

the Legislature.'" *Oliveira v. Lombardi,* 794 A.2d 453, 457 (R.I.2002) (quoting *Webster v. Perrotta,* 774 A.2d 68, 75 (R.I. 2001)). To effectuate the OMA's remedial and protective purpose, "these enactments should be broadly construed and interpreted in the light most favorable to public access." *Solas v. Emergency Hiring Council,* 774 A.2d 820, 824 (R.I.2001).

### Standing

▪▪▪ The town argues that plaintiff's status as a resident of the town is not enough to confer standing on him to raise the OMA violation and that he has not alleged that the challenged action has caused him injury in fact of a legally protected interest as opposed to a conjectural or hypothetical interest. The plaintiff counters that he was "clearly disadvantaged" by the deficient notice in that he was "unable to make an informed decision on whether or not to attend the October 23rd meeting and/or to prepare a response to the election of the potential board candidates in advance of the meeting."

▪▪▪ A party acquires standing either by suffering an injury in fact or as the beneficiary of express statutory authority granting standing.[5] The OMA contains a broad grant of statutory standing.[6] "Any citizen or entity of the state who is aggrieved as a result of violations of the provisions of this chapter may file a complaint with the attorney general," § 42–46–8(a), or "retain[ ] private counsel for the purpose of filing a complaint in the superior court * * * against the public body which has allegedly violated the provisions of this chapter." Section 42–46–8(c). The Legislature did not explicitly define what qualifies a citizen or entity as "aggrieved." When interpreting a statute, a court shall not ignore its plain and unambiguous language and must avoid adopting a construction of a statute that would circumvent the

---

**5.** Standing is a constitutional prerequisite to suit in both federal courts and state courts. Under Article III of the United States Constitution, federal courts must limit their judicial review to an actual "case or controversy." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To invoke a federal court's jurisdiction, the plaintiff must have suffered some threatened or actual injury resulting from the putatively illegal action. The Rhode Island Constitution has no express case or controversy requirement and the federal limitation does not apply. Nevertheless, this Court has stated that the test for standing is "injury in fact." *Rhode Island Ophthalmological Society v. Cannon,* 113 R.I. 16, 26, 317 A.2d 124, 129 (1974).

"A plaintiff has standing when 'the plaintiff alleges that the challenged action has caused him [or her] injury in fact, economic or otherwise.'" *Weybosset Hill Investments, LLC v. Rossi,* 857 A.2d 231, 239 (R.I.2004) (quoting *Cannon,* 113 R.I. at 22, 317 A.2d at 128). This "injury in fact" requirement has been described as "an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Ahlburn v. Clark,* 728 A.2d 449, 451 (R.I.1999) (quoting *Pontbriand v. Sundlun,* 699 A.2d 856, 862 (R.I.1997)). Moreover, "[s]tanding is not determined by whether the injury is substantial or insubstantial, but only whether there is some injury as opposed to no injury." *Weybosset Hill Investments, LLC,* 857 A.2d at 239.

**6.** In statutory standing cases, such as this, the analysis consists of a straight statutory construction of the relevant statute to determine upon whom the Legislature conferred standing and whether the claimant in question falls in that category. *Cf. Linda R.S. v. Richard D.,* 410 U.S. 614, 617n, 93 S.Ct. 1146, 35 L.Ed.2d 536.3 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."). In conducting this analysis, we do not look at the eventuality of success on the merits but, rather, at whether a party is arguably within the zone of interests to be protected or regulated by the statute in question. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153–54, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

evident purpose of its enactment. On its face, the avowed purpose of the OMA is that "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy." Section 42–46–1. The plain language of this chapter clearly demonstrates that the purpose of the OMA is to protect the public's right to participate in the political process, and not an individual's property or contract rights. Thus, the statutory requirement that an individual be "aggrieved" by a violation of the OMA does not require that a plaintiff allege some harm to his or her economic or property interests, but rather that his or her right to be "advised of and aware of" the performance, deliberations, and decisions of government entities was, or may be, violated.[7]

Moreover, this Court previously has held that the OMA "does not require individuals to possess a personal stake or interest in the substance of the meeting to assert a right to attend a meeting of a public body," *Solas*, 774 A.2d at 823, and consequently, plaintiff's right to be advised of the business to be conducted at the meeting does not depend on his or her having a personal stake in the substance of the meeting. Clearly, since members of the general public have a right to receive notice of public meetings, a member of the public should have standing to enforce that right. Furthermore, this Court has indicated that even an individual who actually attends a meeting still may establish standing through demonstrating that he or she was aggrieved or disadvantaged by, for example, the lack of preparation or inability to respond to an issue. *See Graziano v. Rhode Island State Lottery Commission*, 810 A.2d 215, 222 (R.I.2002) (holding that the plaintiff, who actually attended the meeting, lacked standing to challenge the alleged inadequacy of the meeting notice because there was no showing of disadvantage or aggrievement; but also noting that "attendance at the meeting would not prevent a showing of grievance or disadvantage, such as lack of preparation or ability to respond to the issue").[8]

Consequently, given plaintiff's status as a resident of East Greenwich, and his allegation that the improper notice of the East Greenwich Town Council meeting resulted in his being aggrieved or disadvantaged by failing to attend the meeting or being unprepared or unable to respond to the issue during the meeting, we conclude that plaintiff had standing to bring this action pursuant to § 42–46–8(a)(c).

### Mootness

▇▇▇▇ The town also contends that, since the town council gave proper notice of a second meeting in which it again voted to

---

7. In *Solas v. Emergency Hiring Council*, 774 A.2d 820, 823 (R.I.2001), we held that the plaintiff "had statutory standing to raise the issue of potential future violations of the [OMA]." Requiring plaintiff to show an injury in fact to an actual legally protected interest caused by a "potential future violation" would cast upon him a burden of clairvoyance, which it is doubtful that even the prophetic powers of Nostradamus could meet.

8. In *Graziano v. Rhode Island State Lottery Commission*, 810 A.2d 215 (R.I.2002), the Court rejected the argument that the plaintiff

had standing to object to the notice on behalf of the public. The Court noted that "[i]nsofar as [the plaintiff] was a representative of the public, she was also present at the meeting," *id.* at 222, and that "[i]t can scarcely be contended that the public was aggrieved when the media and their representatives were present in force." *Id.* The present situation is completely different. The plaintiff was not present at the meeting, and Mr. Tufts testified that no members of the media or the general public, save for the actual interviewees, were present at the meeting.

appoint the same two people to the planning board and the same person to the zoning board, the issue raised by plaintiff is moot. The plaintiff argues that the controversy is not moot because the case is of extreme public importance, which is capable of repetition but which evades review. The plaintiff notes that the town continues to assert that it acted properly in providing notice of the October 23 meeting, and that this position clearly indicates the town council's intent to engage in similar conduct in the future. The plaintiff argues that the town could continue to give improper notice of meetings and, if challenged, then agree to comply with the OMA to avoid an adverse judgment. Moreover, plaintiff posits that the town's subsequent remediation of its OMA violation does not negate the fact that it violated the OMA on October 23, 2001.

"This Court has consistently held that a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." *Cicilline v. Almond,* 809 A.2d 1101, 1105 (R.I.2002) (quoting *Associated Builders & Contractors of Rhode Island, Inc. v. City of Providence,* 754 A.2d 89, 90 (R.I.2000)). The plaintiff's complaint, however, alleged a willful and knowing violation of the OMA, and requested that the court impose a civil fine of $5,000, in addition to injunctive relief.[9] The plain language of § 42–46–8(d) indicates that the OMA provides three possible remedies for a violation of its provisions—attorney's fees, injunctive relief, and/or a civil fine.[10] The fact that one remedy—injunctive relief—may have been[11] rendered moot does not affect the

---

**9.** General Laws 1956 § 42–46–8 entitled, "Remedies available to aggrieved persons or entities" provides:

"(d) The court shall award reasonable attorney fees and costs to a prevailing plaintiff, other than the attorney general, except where special circumstances would render such an award unjust.

"The court may issue injunctive relief and declare null and void any actions of a public body found to be in violation of this chapter. In addition, the court may impose a civil fine not exceeding five thousand dollars ($5,000) against a public body or any of its members found to have committed a willful or knowing violation of this chapter."

**10.** The view that attorney's fees under the OMA are a form of relief is buttressed by the explicit purpose of the act—to ensure that "citizens be advised of and aware of the performance" of governmental officials and entities. As demonstrated above, a citizen need not suffer economic damage to be "aggrieved" under the OMA, and thus would not obtain an award of monetary damage under the OMA. The award of attorney's fees would provide an economic incentive to challenge violations of the OMA, deter future violations, and penalize public bodies for noncompliance

with the act. *See, e.g., N.A.S. Import, Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 254 (2d Cir.1992) (noting that the purpose of an award of attorney's fees in copyright infringement cases " 'assures equal access to courts, provides an economic incentive to challenge infringements, and penalizes the losing party.' "). Additionally, in *Solas,* 774 A.2d at 826, we "conclude[d] that the attorney's fees provision [was] an additional *remedial measure* to a previously existing substantive right," and upheld the award of attorney's fees for a non-willful or knowing violation of the OMA. (Emphasis added.)

**11.** We note, without determining, that the voluntary cessation of an activity may not necessarily moot the remedy of injunctive relief. A request for injunctive relief is directed at the court's equitable powers, and a court would not be precluded from issuing an injunction to prevent future violations provided the court is satisfied that the requirements for an injunction are met. *See, e.g., Solas,* 774 A.2d at 822, 826 (upholding the award of injunctive relief even though the defendant was voluntarily in compliance with the provisions of the OMA). The structure of the OMA grants the trial court discretion to determine which form of relief is best suited, in the particular case,

viability of the case or the remaining remedies.[12] The town's voluntary renotice and reappointment would not undo a violation, especially a "willful and knowing" violation of the OMA, and moot the remedy of a civil fine or attorney's fees, or possibly even an injunction, for that violation.[13]

Accordingly, we conclude that notwithstanding the town's subsequent voluntary compliance with the OMA, the issues of whether the town council in fact violated the OMA on October 23, 2001 and, if so, whether it did so willfully, still were justiciable controversies.

### Open Meetings Act Violation

■ The Legislature enacted the OMA to ensure that "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy." Section 42–46–1. The OMA requires that "[a]ll public bodies shall give written notice of their regularly scheduled meetings at the beginning of each calendar year," § 42–46–6(a), and "supplemental written public notice of any meeting within a minimum of forty-eight (48) hours before the date." Section 42–46–6(b). "This [supplemental] notice shall include the date the notice was posted, the date, time and place of the meeting, and a statement specifying the nature of the business to be discussed." *Id.* The plaintiff contends that the town gave improper notice of the October 23, 2001 meeting by failing to state or imply that the town council would vote to appoint board and commission candidates. The town contends that the OMA contains no explicit requirement that it must provide notice of its intention to vote. The town asserts that the advisory opinions and findings of the Attorney General on the OMA are entitled to deference by this Court because the Attorney General has administrative and enforcement powers under the OMA, and cites OMA opinions from the Attorney General that stand for the proposition that a public body's notice for a meeting does not have to indicate that it intends to vote on a matter. In the town's view, the OMA simply requires that the general public be made aware of the nature of the business to be discussed at a meeting and that the agenda, as posted in advance of the October 23, 2001 meeting, satisfied that requirement.

---

to abate current violations and deter future ones. The parties, however, have not appealed this issue.

**12.** *Cf. Calderon v. Moore,* 518 U.S. 149, 150, 116 S.Ct. 2066, 135 L.Ed.2d 453 (1996) (per curiam) ("[A]n appeal should therefore be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant 'any effectual relief whatever' in favor of the appellant. * * * The available remedy, however, does not need to be 'fully satisfactory' to avoid mootness. * * * To the contrary, even the availability of a 'partial remedy' is 'sufficient to prevent [a] case from being moot.' ")

**13.** If in fact the town committed a knowing and willful violation of the OMA, its subsequent actions do not "unring the bell." Just as a "knowing and willful" violator of the

Rhode Island Code of Ethics, G.L. 1956 chapter 14 of title 36, does not moot the ethics violation by severing the conflict of interest and revoting, or in a simplification, a trespasser does not moot the case by removing himself from the trespassee's property, a knowing and willful violator of the OMA cannot escape the civil penalty by subsequently "correcting" the violation. *Cf. Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 196, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (upholding a finding of a violation of the Clean Water Act after the defendant voluntarily ceased the offending activity and noting: "This conclusion is consistent with the structure of the Clean Water Act, which attaches liability for civil penalties at the time a permit violation occurs.").

"It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996). "Moreover, when we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.'" *State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998) (quoting *In re Denisewich,* 643 A.2d 1194, 1197 (R.I.1994)). However, "when confronted with statutory provisions that are unclear or ambiguous, this Court, as final arbiter of questions of statutory construction, will examine statutes in their entirety, and will 'glean the intent and purpose of the Legislature "from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement" of the provisions to be construed.'" *Mottola v. Cirello,* 789 A.2d 421, 423 (R.I.2002) (quoting *In re Advisory to the Governor,* 668 A.2d 1246, 1248 (R.I.1996) and *Algiere v. Fox,* 122 R.I. 55, 58, 404 A.2d 72, 74 (1979)). Moreover, in accomplishing this task, our purpose is to "determine and effectuate the Legislature's intent and [ ] attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Keystone Elevator Co. v. Johnson & Wales University,* 850 A.2d 912, 923 (R.I.2004) (quoting *State v. Burke,* 811 A.2d 1158, 1167 (R.I.2002)).

The explicit purpose of the OMA that "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy," § 42–46–1, clearly demonstrates the Legislature's intent that citizens be given a greater opportunity to become fully informed on issues of public importance so that meaningful participation in the de-

cision-making process may be achieved. To effectuate that intent, the Legislature required, among other provisions, that public bodies provide notice of their meetings and include in that notice a "statement specifying the nature of the business to be discussed." The Legislature did not explicitly specify or delineate the exact requirements of this "statement." In our opinion, the Legislature intended to establish a flexible standard aimed at providing fair notice to the public under the circumstances, or such notice, based on the totality of the circumstances, as would fairly inform the public of the nature of the business to be discussed or acted upon.

Similar conclusions have been reached by courts in other jurisdictions with comparable "open meeting" statutes. For example, the Tennessee Public Meetings Act requires that "[a]ny such governmental body which holds a meeting previously scheduled by statute, ordinance, or resolution shall give adequate public notice of such meeting." Tenn.Code Ann. § 8–44–103(a) (2004). The stated purpose of the Tennessee Public Meetings Act is that "[t]he general assembly hereby declares it to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret." Tenn.Code Ann. § 8–44–101 (2004). The Tennessee Supreme Court has held that "it is impossible to formulate a general rule in regard to what the phrase 'adequate public notice' means. However * * * adequate public notice means adequate public notice under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public." *Memphis Publishing Co. v. City of Memphis,* 513 S.W.2d 511, 513 (Tenn.1974).

Similarly, Colorado's Open Meetings Law provides that "[a]ny meetings at which the adoption of any proposed * * *

resolution, rule, regulation, or formal action occurs or at which a majority or quorum of the body is in attendance * * * shall be held only after full and timely notice to the public." Colo.Rev.Stat.Ann. § 24–6–402(2)(c) (West 2004). The Colorado Supreme Court has held that

> "[t]he Open Meetings Law itself neither establishes the manner in which notice must be given nor defines the content of the required notice. In view of the numerous meetings to which the statutory requirement is applicable, we hold that the 'full and timely notice' requirement establishes a flexible standard aimed at providing fair notice to the public. 'Full and timely notice' for legislative committee meetings, which may be held almost daily, differs from 'full and timely notice' for a monthly meeting of a public board. Consequently, whether the statutory notice requirement has been satisfied in a given case will depend upon the particular type of meeting involved." *Benson v. McCormick*, 195 Colo. 381, 578 P.2d 651, 653 (1978).[14]

■ Consequently, in light of the explicit purpose of the OMA that "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy," we hold that the requirement that a public body provide supplemental notice, including a "statement specifying the nature of the business to be discussed," obligates that public body to provide fair notice to the public under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public of the nature of the business to be discussed or acted upon. Although we recognize that this standard is somewhat flexible and we decline to provide specific guidelines or "magic words," such an approach accounts for the range and assortment of meetings, votes, and actions covered under the OMA, and the realities of local government, while also safeguarding the public's interest in knowing and observing the workings of its governmental bodies.[15]

■ Returning to the present case, we recognize that the OMA does not explicitly require a public body to identify on the notice that it intends to vote on an issue at the meeting; however, our task is to determine whether the notice provided by the town council fairly informed the public, under the totality of the circumstances, of the nature of the business to be conducted. In addition to satisfying the date and time requirements of § 42–46–6(b), the contents of the notice reasonably must describe the purpose of the meeting or the action pro-

---

**14.** The Colorado Supreme Court further refined its interpretation in *Board of County Commissioners v. Costilla County Conservancy District*, 88 P.3d 1188, 1189 (Colo.2004), in which it held:

> "a local public body * * * is required to give public notice of any meeting attended or expected to be attended by a quorum of the public body when the meeting is part of the policy-making process. A meeting is part of the policy-making process when the meeting is held for the purpose of discussing or undertaking a rule, regulation, ordinance, or formal action. If the record supports the conclusion that the meeting is rationally connected to the policy-making responsibilities of the public body holding or attending the meeting, then the meeting is subject to the OML, and the public body holding or attending the meeting must provide notice."

**15.** However, because the OMA places an affirmative duty on the public body to provide this notice, the public body's willingness to comply with the OMA should be such that the citizens, or the Attorney General, will not be compelled to resort to the courts to assure that a public body has complied with its statutory duty.

posed to be taken. Here, plaintiff contends that the notice was misleading, and that misleading notice does not comply with the requirements of the OMA. We agree. Clearly, fair notice to the public under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public of the nature of the business to be discussed or acted upon, is not met by misleading information about the actions to be taken at a meeting of a public body.[16] In this case, the notice listed the only agenda item as: "Interviews for Potential Board and Commission Appointments," and then listed the names of potential appointees beside their respective scheduled interview times, with each interview scheduled twenty minutes apart. In our opinion, listing the agenda of the meeting as consisting of "interviews" for potential appointments fairly implies just that, *viz.*, that the town council only would be conducting interviews that evening. It does not reasonably describe the purpose of the meeting or the action proposed to be taken as including "voting" on the appointments of these potential board members. In common parlance, "interview" implies a formal meeting in which the interviewer elicits information

from the interviewee to aid in evaluating the interviewee.[17] Hence, by posting the agenda as consisting of interviews, the town failed to provide notice to the public that would reasonably describe the action that the town council ultimately took.[18] This conclusion is buttressed by the fact that, on the posted notice, immediately after the names of potential appointees and their respective scheduled interview times, there is no further indication that any action would be taken on these "potential" appointees. The posted notice clearly implies that the purpose of the meeting was to conduct interviews only, and that at the close of the last twenty-minute interview the meeting would end. The posted notice neither states nor implies that the town council would vote to appoint these potential board members; instead, the notice implies that the town council would not vote on the appointments, but rather conduct interviews, *i.e.*, gather information from the potential appointees.

In light of our conclusion that the notice in this case did not fairly inform the public that votes would be taken at the October 23 meeting, we need not consider what, if any, deference the advisory opinions of the

16. We do not suggest that the town council intentionally misled the public with regard to the notice, and the hearing justice found that plaintiff did not prove a knowing and willful violation, but we do believe that the notice was insufficient under the circumstances presented in the record before this Court.

It goes without saying, that "misleading" notice never can comply with the statutory purpose of the OMA that "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy." Section 42–46–1.

17. The definition of the word "interview" provides:

"1. A formal meeting in person, especially one arranged for the assessment of the qualifications of an applicant. 2a. A

conversation, such as one conducted by a reporter, in which facts or statements are elicited from another. b. An account or a reproduction of such a conversation." The American Heritage Dictionary 916 (4th ed. 2000).

Moreover, the word interview derives from the Latin inter (between) and videre (to see). *Id.* at 917.

18. Section 42–46–6(b) provides the means through which a public entity can add additional non-posted items to the agenda, and explicitly prohibits voting on those items "except where necessary to address an unexpected occurrence that requires immediate action to protect the public or to refer the matter to an appropriate committee or to another body or official."

Attorney General are entitled to receive. We do not read any of the Attorney General's "open meetings act finding[s]" cited to us by defendants as suggesting that misleading notice comports with the OMA.

We reiterate that the OMA places an affirmative duty on the public body to provide adequate notice of meetings. The town council failed to provide adequate notice of this meeting, and thus violated the OMA. Consequently, we affirm the Superior Court's grant of summary judgment in favor of plaintiff.

### Attorney's Fees

On May 24, 2002, a hearing was held before the same Superior Court justice on the appropriate remedy for the town's OMA violation. The hearing justice had reserved ruling on the issue of remedy, indicating that there were genuine issues of material fact about "whether or not attorney's fees and in what amount are reasonable" and "whether or not the conduct was willful." After hearing the testimony of Mr. Tufts, the only witness who testified at the hearing, the hearing justice found that the town had not demonstrated any "special circumstances" that would allow it to escape paying plaintiff's attorney's fees. She awarded plaintiff attorney's fees and costs, but denied his request to impose a civil fine. She found that plaintiff had not met his burden of demonstrating that the town willfully or knowingly violated the OMA. The hearing justice specifically noted that even Mr. Tufts, the only witness to testify, did not believe that the council was violating the OMA in voting on the appointments at the October 23 meeting. On June 5, 2002, a judgment of $11,193.89 entered in favor of plaintiff.

The town does not dispute plaintiff's status as a prevailing party. Rather, it asserts that the award of attorney's fees to plaintiff was not appropriate because spe-cial circumstances existed to make such an award unjust.

First, the town argues that it should not be penalized for acting consistently with multiple OMA opinions issued by the Attorney General, particularly when, as here, such opinions are contained in a guidebook that the Attorney General provided to local officials, and are discussed at an annual seminar on the OMA that the Attorney General conducted for governmental bodies. In a memorandum submitted to the court, as well as on appeal, the town argues that "the Attorney General's office had consistently ruled that the OMA does *not* require a public body to indicate in advance that it intends to vote on a given matter, provided that the notice is not misleading." This argument is unavailing, however, in light of our conclusion that the notice provided by the town did indeed mislead the public into believing that only interviews would be conducted that evening, and did not fairly inform the public that the town council also would vote to fill appointments.

Second, the town asserts that the subsequent council meeting and reappointment cured any violation, and thus attorney's fees were not warranted because plaintiff was not aggrieved by any OMA violation at the October 23 meeting. The plaintiff counters that the town cannot assert that special circumstances weigh against an award of attorney's fees when the town stubbornly refused to concede that an OMA violation had occurred and allowed plaintiff's legal fees to increase.

As previously noted, the OMA affords three possible remedies for a violation of its provisions—attorney's fees, injunctive relief, and/or a civil fine. Section 42–46–8(d); *see supra,* note 9. Although the OMA explicitly grants the court discretion to issue either injunctive relief after finding any violation and/or a civil fine after find-

ing that a public body or any of its members have committed a willful or knowing violation, *id.*, we previously have said that a prevailing plaintiff is entitled to a "mandatory award of reasonable attorney's fees unless such an award would be unjust." *Solas*, 774 A.2d at 825.

We have characterized the award of attorney's fees as "mandatory," but it is clear that the Legislature intended to grant the court a great deal of discretion in determining the amount of these attorney's fees. Read as a whole, and particularly in light of the fact that attorney's fees are a remedy under the OMA, the OMA clearly indicates that the Legislature intended the courts to consider the myriad of circumstances involved with providing public notice of meetings and instructed the courts to rely upon tenets of justice and fairness in fashioning an award of attorney's fees. *See, e.g., Edwards v. State*, 677 A.2d 1347, 1349 (R.I.1996) (overturning the remedy for an OMA violation for an "unfortunate yet innocent mistake" on the part of the defendant school committee, and noting that "[w]hen a remedy is selected, it must be proportional to the breach and the effect thereof").

Consequently, we conclude that although the OMA requires the remedy of attorney's fees to a prevailing plaintiff, the court, in fashioning the amount of this award, must ensure that the remedy is proportional to the breach and the effect thereof, by considering the circumstances surrounding the OMA violation. The OMA places the burden of bringing forth evidence of special circumstances on a defendant who seeks to avoid the remedy of attorney's fees; however, the court also

must consider inherent tenets of justice and fairness in determining the amount, ensuring that the remedy is "proportional to the breach and the effect thereof." *See, e.g., Edwards*, 677 A.2d at 1349. Consequently, this Court will review the award and the amount of attorney's fees under an abuse-of-discretion standard.[19]

Returning to the present case, under the provisions of the OMA, plaintiff was entitled to an award of attorney's fees upon a finding that the town had violated the provisions of the law. There is no requirement that the violation be knowing or willful. Accordingly, the hearing justice's finding that the town had violated the OMA triggered entitlement to a fee award, unless defendants could demonstrate that "special circumstances would render such an award unjust." Section 42–46–8(d). After granting summary judgment to plaintiff, the hearing justice convened a hearing on the appropriate remedy for the town's OMA violation. At the hearing, plaintiff attempted to demonstrate that the town had willfully or knowingly violated the OMA, subjecting the town to a civil fine; conversely, the town attempted to demonstrate that there existed special circumstances, which would eliminate the remedy of attorney's fees. At the hearing, the town's counsel argued that "[o]ur special circumstances is simply, * * * the [Attorney General] specifically ruled this is not a violation."

After hearing the testimony of Mr. Tufts, the hearing justice asked the town's counsel if he had any evidence to offer, and counsel responded that he did not. The hearing justice indicated that the town bore the burden of demonstrating special

---

**19.** "[O]n review, '[t]he decision of the trial court made in the exercise of a discretionary power should not be disturbed unless it clearly appears that such discretion has been improperly exercised or that there has been an abuse thereof.'" *Keystone Elevator Co. v. Johnson & Wales University*, 850 A.2d 912, 921 (R.I.2004) (quoting *Frank N. Gustafson & Sons, Inc. v. Walek*, 599 A.2d 730, 733 (R.I. 1991)).

circumstances that would render attorney's fees unjust, and had failed to meet "its burden to avoid the attorney's fees issue." The hearing justice reviewed the testimony of Mr. Tufts, and noted that at least one of the "potential candidates" was considered controversial and that members of the public had expressed a desire to comment on her candidacy. The hearing justice indicated that, based on the evidence presented, "there's just more, perhaps, than meets the eye," than simple reliance on the opinion of the Attorney General. She further noted that "[i]t looks as though [the] vote, which was not on the agenda, may have been rushed through. * * * I do not think that the [town] has met its burden to show that the special circumstances exist that the award of attorney's fees, which is mandated, unless they exist, should be avoided." Consequently, the hearing justice granted plaintiff's request for attorney's fees.

■■■■ The town's counsel then said that he did not "have an issue with the time put in or the hourly rate" that plaintiff's counsel charged, but asked the hearing justice to limit the fees to the period before the November 26, 2001 revote because "the revote cured the situation." The hearing justice denied this request, noting that the case was not mooted by the November 26, 2001 revote and that, up until she made the ruling on the OMA violation, the town continued to assert that there was nothing wrong with the original posted agenda, necessitating the judicial determination. The hearing justice noted that in light of the public purpose behind the OMA and her ruling that a violation had occurred, plaintiff was "entitled to the attorney's fees with respect to this litigation. So, [the town's] request to have the attorney's fees award stop with the re-vote [was] denied."

The only reason that the hearing justice articulated in denying the town's request to mitigate attorney's fees was the town's insistence, at least until such time as plaintiff was awarded summary judgment, that it had not violated the OMA. Although the revote by the town council did not render plaintiff's complaint moot, it was a factor which, in our judgment, the hearing justice could and should have considered in its award of attorney's fees.

■■■■ Although we find no abuse of discretion in the hearing justice's determination that the town council failed to meet its burden of demonstrating that it had relied on opinions of the Attorney General, its proffered special circumstance, we are unable to determine from the record what factors the hearing justice did rely on in fashioning the remedy, *i.e.,* the award of attorney's fees. As described above, the award of attorney's fees is a mandatory remedy for a violation of the OMA. In fashioning this remedy, however, the court is required to consider inherent tenets of justice and fairness, thus ensuring that the remedy is "proportional to the breach and the effect thereof." In examining the transcripts of this hearing, we are unable to find any evaluation by the hearing justice in this regard, and consequently, we are unable to assess whether the hearing justice properly exercised her discretion or whether there had been an abuse thereof. Accordingly, we vacate the award of attorney's fees.

■■■■ In light of the fact that we have the complete record before us, and in the interest of judicial economy, we need not remand this case for a reassessment of attorney's fees. Rather, we have all the necessary information available to us such that we may use our inherent power to apply tenets of justice and fairness to the factual findings of the hearing justice, and fashion an appropriate remedy.

As indicated above, we consider the remedial action taken by the town council to be a significant factor. By rescheduling, renoticing, and revoting on the challenged appointments, the town council, albeit belatedly, was acting in conformity with both the letter and spirit of the avowed purpose of the OMA—to ensure that "public business be performed in an open and public manner." Proper notice of the November 26, 2001 meeting was given, and the public was fairly apprised that a vote would be taken to fill board vacancies. Any citizen wishing to attend was thereby given the opportunity to do so. Although a public body may be held accountable for violations of the OMA, it ought not to be further penalized when it takes appropriate corrective measures.

Here, the hearing justice specifically found that plaintiff had failed to establish that the town council's actions amounted to a willful violation of the OMA. Nor does it appear to us that this is a situation in which the town was defiantly threatening to continue the practice; rather, it was simply maintaining its position that the actions in question were consistent with the OMA. We do not read the OMA as requiring an act of contrition by a public body that may have transgressed its provisions. Rather, we conclude that, under the circumstances of this case, the acts of the town council were sufficient to redress its original non-willful violation of the OMA. Moreover, after our considerable review of the statutory language, we conclude that the question of whether the town council violated the OMA is a particularly close call, and we cannot fault the town council for aggressively defending itself against plaintiff's allegations.

In the circumstances of this case, therefore, and particularly in view of the fact that the town council was not found to be in willful violation of the OMA, and further

that it took appropriate measures to correct its mistake, we are of the opinion that an award of attorney's fees and costs in favor of plaintiff in the amount of $1,500 is just, fair, and proportional to the breach. Accordingly, we remand the case for entry of judgment for plaintiff in said amount.

## Conclusion

We acknowledge that reasonable minds can differ on what notice constitutes "fair notice" in any given situation. We do not intend to establish a rule today that requires a public body to give explicit notice that a vote will be taken before it can so vote on a particular subject. Our pronouncement today, rather, is that a vote may not be taken consistently with the OMA when the notice specifically and only provides that interviews will be conducted.

For the foregoing reasons, we affirm the entry of summary judgment and vacate the award of attorney's fees. We remand the case to the Superior Court for entry of judgment consistent herewith.