DECISION
Before the Court is plaintiff Carol Baker's (Baker) administrative appeal challenging a decision issued by the Rhode Island Department of Business Regulation (DBR) regarding her Class B liquor license. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
Carol Baker is the owner of commercial property located at 223 Thayer Street in Providence, RI (the Property). In 1985, at the time she purchased the Property, the first floor of the building was occupied by the original Gregg's Restaurant, which held a Class B liquor license (the "License"). See Transcript of October 16, 2003 (Tr.) at 10. When Gregg's left the premises, Baker purchased the license and found a new tenant, Au Bon Pain, to rent the first floor of the building. Tr. at 10-11. She did not, however, transfer the License to the new restaurant, although she did continue to renew the License on a yearly basis. Tr. at 11-12.
On April 30, 2003, at a hearing before the City of Providence's Board of Licenses ("Board") at which Baker was present, the License was revoked for nonuse. Baker appealed this decision to the Director of the DBR pursuant to G.L. 1956 § 3-7-21. The Hearing Officer of the DBR, sitting as designee of the Director, held hearings on June 17, *Page 2 
2003 and October 16, 2003. At the October 16th hearing, Baker testified on her own behalf, stating that she attempted to transfer the License to the second floor of the building in September 2002 by completing the application and paying an advertising fee to the City. Tr. at 14-15. She further stated that, as part of the transfer process, she had made arrangements for a radius plan and the redesign of the second floor space. Tr. at 15-16.
Baker then testified that she had met with the licensing administrator, Richard Aitchison, for the Board and attempted to pay her renewal fee, but was told to wait in order that the transfer and the renewal could be completed at the same time. Tr. at 16-17. She stated that she wanted to complete the application, but due to the recent change in the mayoral administration and the dismissal of Richard Aitchison, she received no direction from City Hall. Tr. at 30. On cross-examination, Baker confirmed that she had held the License for twelve years without using it. Tr. at 31.
After considering all of the testimony put forth at the hearings and reviewing the parties' written briefs, the DBR hearing officer issued a decision ("Decision"), upholding the revocation of Baker's License under Section 3-7-6, which allows a licensing authority to reject a renewal application for a license "for cause." On the same day, the Director of the DBR reviewed and adopted the Decision. In response, Baker filed a timely appeal in this Court.
 Standard of Review
The Superior Court's review of an administrative decision is governed by the Administrative Procedures Act. § 42-35-15. Under this act,
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of *Page 3 
fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." § 42-35-15(g).
In reviewing an administrative agency's decision, this Court will examine the certified record to determine whether the decision is supported by substantial evidence. Ctr. For Behavioral Health, RhodeIsland, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Newport Shipyard, Inc. v. Rhode Island Comm'n for HumanRights, 484 A.2d 893, 897 (R.I. 1996). This Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact," Ctr. For Behavioral Health, 710 A.2d at 684
(citations omitted). Questions of law, however, are reviewed by this Court de novo Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607,376 A.2d 1, 6 (1977), but "[w]here the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." Gallison v. Bristol School *Page 4 Committee, 493 A.2d 164, 166 (R.I. 1985); Sutherland, Statutes andStatutory Construction § 65.03 (4th ed., 1984 Cum Supp.).
 Analysis
Essentially, the parties disagree on the proper interpretation of the statutes regarding the issuance and revocation of licenses in Rhode Island. In the Decision, the DBR found that Title 3, taken as a whole, clearly demonstrates a legislative intent to regulate the sale of alcoholic beverages strictly. Therefore, it noted, the licensing requirements contained therein must be construed narrowly and followed meticulously. The DBR held that Baker had violated Sections 3-7-7 and3-5-9; as a result, it upheld the Board's revocation of the License under Section 3-7-6.
Baker, in turn, claims that these statutes are irrelevant because they relate to the requirements for issuance of a license, not therevocation of one. She argues that she was in compliance with all the applicable standards at the time of issuance, and therefore the License could only have been revoked for a legally significant cause such as abandonment. Baker claims that the evidence before the Board was insufficient to warrant a finding of abandonment or any other legally significant cause for revocation, and therefore the revocation was made unlawfully. She further argues that the enactment Section 3-5-16.1, a statute that specifically provides for the revocation of abandoned Class A liquor licenses and does not refer to Class B liquor licenses, indicates that non-use is not a ground for revocation of Class B licenses. Additionally, Baker argues that the DBR abused its discretion when it revoked the License because the only equitable resolution was to permit Baker to proceed with her application to transfer her license for use on the second floor of the building. *Page 5 
 A. Statutory Requirements of Sections 3-7-7 and 3-5-9
Section 3-7-7 states that a "retailer's Class B license is issued only to a licensed bona fide tavern keeper or victualer whose tavern or victualing house may be open for business and regularly patronized at least from nine o'clock (9:00) a.m. to seven o'clock (7:00) p.m. . . ." The DBR found that under this statute, only bona fide restaurants that have the proper business hours should be allowed to maintain a Class B license. As the License in question was not attached to any such restaurant, the DBR held that it violates this section and is therefore invalid.
Additionally, the DBR found that the License violates Section 3-5-9, which requires that "[e]very license shall particularly describe the place where the rights under the license are to be exercised." Because the License was not being used at the address to which it was issued, the DBR held that Section 3-5-9 had been violated as well. In the Decision, the DBR stated that finding "the License [to be] valid where it was unused for over eleven (11) years would make a mockery of the statutory requirements set forth by the Legislature to obtain and maintain a Class B liquor license." See Decision at 10.
The Court must first address the DBR's determination that the requirements delineated in Sections 3-7-7 and 3-5-9 are applicable to Class B liquor licenses already issued. "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Tanner v. Town Council,880 A.2d 784, 796 (R.I. 2005) (citations omitted). "Moreover, when we examine an unambiguous statute, `there is no room for statutory construction and we must apply the statute as written.'" Id. However, when a statute is unclear or ambiguous, the Court will "determine and effectuate the *Page 6 
Legislature's intent and attribute to the enactment the meaning most consistent with its policies or obvious purposes." Keystone Elevator Co.v. Johnson Wales University, 850 A.2d 912, 923 (R.I. 2004) (quotingState v. Burke, 811 A.2d 1158, 1167 (R.I. 2002)). As noted above, the construction of a statute given by the agency charged with its enforcement is entitled to weight. See Gallison, 493 A.2d at 166. Additionally, the rules of statutory construction provide that all statutes relating to the same subject matter "should be construed such that they will harmonize with each other and be consistent with their general objective scope." Blanchette v. Stone, 591 A.2d 785, 786 (R.I. 1991).
In Section 3-1-5, the Legislature expressly states that the declared purpose of title 3 is "the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." See alsoThompson v. East Greenwich, 512 A.2d 837, 842 (R.I. 1986);Independent Beer Distribs. Ass'n v. Liquor Control Hearing Bd.,94 R.I. 354, 361 180 A.2d 805, 808-09 (1962). Additionally, this Section explicitly directs that the "title be construed liberally" to further this purpose. Section 3-7-6 provides that an application for renewal of a license can be rejected for cause, and Section 3-5-21(a) states that, "[e]very license is subject to revocation or suspension . . . by the board, body or official issuing the license . . . for breach of any provisions of this section." Taken together, these sections unambiguously indicate a legislative intent to control the sale of alcoholic beverages through a statutory licensing scheme, and thus the Court must pay particular attention to the requirements contained in these sections.
The Court will not construe a statute to reach an absurd result.State v. Menard, 888 A.2d 57, 60 (R.I. 2005) (citations omitted). The requirement that a Class B liquor license be issued only to a "licensed bona fide tavern keeper or victiculer" is clearly *Page 7 
delineated in Section 3-7-7, and requiring a license-holder to meet this requirement only at the exact moment of licensure would render it meaningless. Baker's interpretation of the statute would preclude a licensing authority from revoking the license of a license-holder who no longer met the requirements for licensure mere days after issuance. Constraining the licensing authorities in this way does not comport with the goal of reasonably controlling the traffic in alcoholic beverages.
Similarly, applying the provisions of Section 3-5-9 only at the moment of licensure would undercut the purpose of Title 3. The language of Section 3-5-9 indicates a legislative intent to ensure that Class B licenses are valid only when issued to a bona fide retailer. This Section requires that all retail liquor licenses be used at a specific location, and that the "place where the rights under the license are to be exercised" be particularly described in the license itself. The inclusion of such a provision further indicates the Legislature's intent to ensure more regulatory control over liquor licenses by correlating each license with a specific property. If this requirement is to be met only at the moment of issuance, then, again, the requirement itself becomes meaningless. Therefore, the Court finds that the DBR's determination that the requirements in Sections 3-7-7 and 3-5-9 apply to Class B licenses even after issuance comports with the legislative intent of Title 3, and is not an abuse of discretion or an error of law.
Before ending this inquiry, the Court will address Baker's argument related to Section 3-5-16.1. Under this section, a Class A liquor license can be cancelled if the license-holder "has abandoned the premises from which the licensee has been conducting his or her business or has ceased to operate under the license for a period of ninety (90) days or more. . . ." Baker argues that the Legislature's specific mention of Class A *Page 8 
liquor licenses in this section indicates that only these types of licenses, and not the Class B licenses, can be revoked for non-use. However, this argument has been raised for the first time before this Court, and was therefore not addressed by the DBR in the Decision. While the Rhode Island Supreme Court "has not explicitly held that the raise-or-waive doctrine applies to administrative proceedings[,]"East Bay Cmty. Dev. Corp. v. Zoning Board of Review of the Town ofBarrington, 901 A.2d 1136, 1153 (R.I. 2006), it is axiomatic that "[a] party who fails to bring his or her objections to the attention of the trial justice waives the right to raise them on appeal," Montecalvo v.Mandarelli, 682 A.2d 918, 926 (R.I. 1996).[1]
For the sake of discussion, however, the Court notes that it finds Baker's arguments unconvincing. Although this Section provides for an additional avenue for revocation of a Class A liquor license, it does not nullify the requirements of Sections 3-7-7 and 3-5-9 for Class B liquor licenses. Section 3-7-7 controls Class B liquor licensesonly, making it clear that the Legislature intended that this provision be applied to these licenses, notwithstanding the requirements for Class A liquor licenses. It would not have enacted Section 3-7-7 if it did not intend to ensure that only bona fide retailers with specified operating hours be allowed Class B licenses. Furthermore, Section 3-5-16.1 does not negate the provision in Section 3-5-21 that a license may be revoked for breach of any provisions of this section, nor does it undo the provision in Section 3-7-6 that a renewal application can be denied for cause. *Page 9 
Thus, having upheld the DBR's determination that these Sections apply to Class B liquor licenses after issuance, the Court must now examine the DBR's finding that Baker has violated the provisions of Sections3-7-7 and 3-5-9. A review of the record reveals that this finding is supported by the reliable, probative, and substantial evidence before the Court. Clearly, the License is not issued to a bona fide tavern keeper or victicular, as Baker's own testimony at the hearing revealed that she had never transferred the License to the restaurant currently occupying 223 Thayer Street. Similarly, the License violates the provisions of Section 3-5-9 because, although the License does contain a particularly described location, the rights had not been exercised there for years. In fact, Baker could not possibly comply with the requirements of Section 3-5-9 because the rights under the License were not being exercised anywhere.
Lastly, the Court must review the DBR's final determination that violations of Sections 3-7-7 and 3-5-9 constitutes "cause" for revocation under Section 3-5-6. Baker argues that non-use cannot constitute "cause" under this statute. The Rhode Island Supreme Court has noted that in order for a renewal application to be rejected "for cause," the cause must be "legally significant, that is to say, it must be bottomed upon substantial grounds and be established by legally competent evidence." Chernov Enterprises, Inc. v. Sarkas, 284 A.2d 61,63, 109 R.I. 283, 287 (1971). By conferring the right to revoke a license for a "breach of any provision of this section," Section 3-5-21
indicates that a breach of an applicable statute would provide legally sufficient cause to revoke a license. As a result, the Court cannot find that the DBR erred as a matter of law when it upheld the revocation of the License for cause under Section 3-7-6 because of Baker's violation of two statutory provisions. *Page 10 
B. Equitable Remedies
Additionally, Baker claims that the DBR abused its discretion when it revoked the License because she argues that the only equitable resolution of this case is that she be allowed to complete the transfer of her License to the second floor of the building. She testified at the October 16th hearing that the Board had annually accepted her renewal fees of $1000, and that at the time of the revocation she had been seeking the transfer in order to put the License to use. Tr. at 12-14. She stated that, in order to effectuate the transfer, she paid an advertising fee and made arrangements for a radius plan and the redesign of the second floor. Tr. at 14-16. It was the chaos in the Board's administration in the fall and winter of 2002, Baker claims, that was the reason the transfer had not already been completed. Thus, she argues, the principles of equitable estoppel prevent the revocation of her License.
In Rhode Island, the doctrine of equitable estoppel has been applied against public agencies in order to prevent injustice and fraud.Romano v. Retirement Board of the Employees' Retirement System of theState of Rhode Island, 767 A.2d 35, 38 (R.I. 2001). The doctrine is applicable when an agency or its officers "acting within their authority, made representations to cause the party seeking to invoke the doctrine either to act or refrain from acting in a particular manner to his [, her, or its] detriment." Id. at 39. However, "the doctrine of equitable estoppel should not be applied . . . when . . . the alleged representations or conduct relied upon were ultra vires or in conflict with applicable law." Id. at 38.
Although the Board renewed the License for eleven years, this renewal was made contrary to law, as discussed in the previous section. The License, which became invalid *Page 11 
when it failed to meet the requirements of a Class B license outlined in Section 3-7-7 and 3-5-9, could not have been lawfully renewed. The Board cannot waive the licensing requirements enacted in Title 3, and would not be acting within its authority if it attempted to do so by granting the renewals. It is regrettable that Baker was allowed to renew an invalid license, but "any party dealing with a municipality is `bound at his own peril to know the extent of its capacity.'" Casa DiMario, Inc.v. Richardson, 763 A.2d 607, 612 (R.I. 2000). Section 3-7-7 clearly states the qualifications for eligibility for a Class B liquor license, and Baker, who is not a "licensed bona fide tavern keeper or victualer," should have been aware she does not fall into this category. Therefore, the DBR did not err or abuse its discretion when it ruled that equitable estoppel is inappropriate in this situation.
 Conclusion
After a review of the record before it, the Court has found that the Department of Business Regulation did not abuse its discretion or err as a matter of law when it upheld the revocation of Carol Baker's Class B liquor license. Substantial rights of Baker have not been prejudiced, and thus, the Court denies Baker's appeal, and affirms the decision of the DBR.
Counsel shall submit an order for entry consistent with this decision.
[1] There is a narrow exception to the "raise or waive" rule; however, "the error complained of must be more than harmless error, the record must be sufficient to permit a determination of the issue, the issue must be of constitutional dimension, and counsel's failure to raise the issue must be attributed to a novel rule of law that counsel could not reasonably have known during trial." State v. Hallenbeck, 878 A.2d 992,1018 (R.I. 2005). There is nothing before the Court to suggest that this narrow exception should be applied to the instant case. *Page 1