DECISION
In this action, plaintiff Teri Ohs, acting on behalf of the Wickford Elementary School Parent Teacher Organization, claims that the North Kingstown School Committee, acting through its agent, Superintendent James Halley, committed a willful or knowing violation of the notice provision of the Rhode Island Open Meetings Act, R.I. Gen. Laws §42-46-6(b), by failing to inform the public that the School Committee intended to discuss and vote upon the issue of closure of the Wickford Elementary School at its May 11, 2005 meeting. The parties agreed to bifurcate the trial of this matter, with the Court first to determine the question of whether, in fact, the School Committee violated the Act. If the Court determined that such a violation occurred, it then would be asked to determine whether any such violation was willful or knowing and, if so, whether plaintiff is entitled to its request for the assessment of a civil penalty of up to $5000 *Page 2 
against the School Committee. It also would be asked to determine if plaintiff is entitled to an award of reasonable attorney's fees as the prevailing party.
This Court previously declared, following the first trial, that the School Committee, acting through its agent Dr. Halley, violated the notice provision of the Act, R.I. Gen. Laws § 42-46-6(b). It found that his notice did not fairly apprise the public that the issues of school closure, reconfiguration and consolidation would be discussed, and the issue of closure of the Wickford Elementary School voted upon, at the subject meeting. Indeed, this Court found that the notice given by Dr. Halley acted to mislead the public into believing that the purpose of the meeting was merely to discuss unfinished budget business in a work session when he knew that the true purpose of the meeting was to vote to close the school. Pursuant to that decision, this Court declared null and void the May 11, 2005 vote of the School Committee to close the school. It enjoined the defendants from taking any action to further implement that vote or the closure, consolidation or reconfiguration of the North Kingstown elementary schools until another vote could be had on the issue of school closure, after fair notice to the public, in strict compliance with the Act and the dictates of this Court. The School Committee followed this Court's edict and subsequently voted to close the Wickford Elementary School.
This Court now determines, following a second trial, that this violation was "willful or knowing," within the meaning of the Act, so as to allow for imposition of a civil penalty against the School Committee. Based on the facts underlying this violation and the secrecy in which the School Committee has shrouded its past deliberations and decisions, this Court orders imposition of a civil fine in the maximum amount allowed by law of $5000. However, in the interest of not unduly penalizing the taxpayers of North *Page 3 
Kingstown for the indiscretions of its public officials and to deter further violations of the Act, this Court will agree to vacate that order upon proof that the School Committee has adopted a policy within 60 days, with the input of plaintiff and other interested citizens, to ensure that it will comply strictly with the mandates of the Open Meetings Act in the future.
This Court also orders the School Committee to reimburse plaintiff, as the prevailing party in both Ohs I and Ohs II, for the attorney's fees she incurred in connection with this litigation in the amount of $30,191.50. Plaintiff was required to litigate her case in Ohs I in this Court to secure nullification of the School Committee school closure vote of May 11, 2005 and a re-vote on that issue after fair notice to the public. Plaintiff needed to litigate her case in Ohs II to punish the School Committee for its willful violation of the Act and to deter it from future violations. Based on the willfulness of the violation, the history of violations by the School Committee of the Open Meetings Act and the adverse impact that the violation had on the ability of the plaintiff, Wickford Elementary School Parent Teacher Organization and the public, to participate in the discussion concerning school closure — and mindful that the School Committee does not challenge the reasonableness of this fee request — this Court finds this award to be proportional to the violation and its effects.
 FINDINGS OF FACT
The extensive findings of fact of this Court connected with the first trial are set forth in Ohs v. North Kingstown School Committee, 2005 R.I. Super. LEXIS 132 (Aug. 10, 2005) (Ohs I). Those findings of fact are incorporated by reference into this Decision. *Page 4 
Having found, in Ohs I, that the School Committee violated the Rhode Island Open Meetings Act, R.I. Gen. Laws § 42-46-6(b), as a result of the failure of its agent, defendant James Halley, to give proper notice of the business to be discussed and voted upon at its meeting of May 11, 2005, this Court convened the second trial to determine if that violation was willful or knowing. At the second trial, this Court received the testimony of Dr. Halley and certain exhibits. Based on the evidence presented, this Court makes the following findings of fact.
At all times relevant to this controversy, Dr. Halley served as a highly educated and experienced Superintendent of Schools for the North Kingstown School District — a large public school district in Rhode Island. He earned his Ph.D. in Education Administration from the University of Southern California, did post-graduate work involving the California open meetings laws, worked for 34 years in the field of education (all but 8 or 9 years of which were in administration), and served as a District Superintendent of Schools in Japan for the Department of Defense where, generally, meetings were held in public and where he dealt frequently with complex questions of regulatory compliance and the drafting of regulations. He served for over ten years as Superintendent of Schools for the North Kingstown School District and worked closely with the North Kingstown School Committee during that time.
Dr. Halley was a student of the Rhode Island Open Meetings Act. He researched its provisions, kept an abstract of it in his desk that he consulted often in his work, and attended seminars and received and reviewed case materials from the Department of Attorney General concerning its provisions. Dr. Halley was the agent of the School Committee for purposes of compliance with the Act and all notices and agendas for its *Page 5 
meetings were published with his review and approval. He had legal counsel available at all times with whom he could consult regarding any compliance questions. In fact, he had consulted with legal counsel regarding the Act's requirements on numerous occasions in the past.
At the time he drafted the public notice for the May 11, 2005 meeting, Dr. Halley was aware of the purpose of the Open Meetings Act, as stated in the preamble, to ensure that "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy." R.I. Gen. Laws § 42-46-1. He was aware further of the provision of the Act that requires a public body to give the public written notice of any public meeting, including a "statement specifying the nature of the business to be discussed."Id. § 42-46-6(b).
Dr. Halley also was aware of other complaints that had been lodged against the School Committee for violations of the Act. In the case ofDexter v. North Kingstown School Committee, the Attorney General found the School Committee to be in violation of the Act for discussing matters in Executive Session that were not on the public meeting agenda and advised the School Committee to make efforts to carefully review the Act and to make efforts to comply with it. Unofficial Finding, OM 98-17 (April 10, 1998). Dr. Halley reviewed this decision with the School Committee, conducted research, looked at the notice provisions of the Act and advised the School Committee that it was in violation of the Act. He knew from this decision that the Attorney General had warned *Page 6 
the School Committee that it would consider any future violations of the Act to be willful and sufficient to pursue legal action in Superior Court. Id. at 7.[1]
Dr. Halley also was aware of a legion of Open Meetings Act complaints that had been lodged against the School Committee by William Mudge, one of its members. Many of these complaints alleged that the School Committee had failed to properly notify the public of its business.[2]
Dr. Halley responded to these complaints on behalf of the School Committee and knew at the time he gave notice of the May 11, 2005 meeting at issue that *Page 7 
the Attorney General was investigating these allegations. Although the Attorney General had not yet completed its investigation into these complaints (and another complaint filed later by School Committee member Melvoid Benson) at the time he gave that notice, that office later issued its findings regarding those complaints in which it found repeated violations of the Act.[3] In fact, with respect to two of the actions filed by Mudge, the Attorney General warned that future violations of the Act by the School Committee could be found willful.[4] With respect to the later complaint filed by Benson, the Attorney General made a finding of a willful violation of the Act by the School Committee.[5]
Dr. Halley also knew that the School Committee had been criticized by the State Department of Education in 2003 for the process it had used in reaching a decision in 2002 to close the Fishing Cove Elementary School. Specifically, the Department raised concerns about the fact that the closure plan was presented and voted upon in a manner that did not allow for public comment. Lynda Avanzato et al. v. North Kingstown SchoolCommittee, Commissioner of Education (Feb. 11, 2003).
When he prepared the notice for the May 11, 2005 meeting, Dr. Halley also was aware that the School Committee, at that meeting, would be discussing issues of school closure, consolidation and reconfiguration of the district's elementary schools. He knew that the School Committee intended to vote at that meeting upon the question of closure *Page 8 
of the Wickford Elementary School — a venerable North Kingstown institution. He knew that those were "hot button" issues in the district, capable of generating substantial public opposition.
Indeed, at the April 27, 2005 meeting that preceded the May 11, 2005 meeting, Dr. Halley outlined his rationale for closing the Wickford Elementary School in a PowerPoint presentation (expecting the School Committee to vote on closure, without prior notice to the public of the intended discussion and vote on that issue). After the School Committee learned that he had not made a similar presentation to any school parent groups, Melvoid Benson, a member of the School Committee, suggested, and the School Committee agreed, to forego a vote on school closure at that meeting and to vote on it at the next meeting — presumably to give a chance for notice to the public and greater input from the citizens. Yet, Dr. Halley and the School Committee took no action, in the interim, to make any similar presentation to any parent groups as to the ramifications of school closure.
These issues of school closure, reconfiguration and consolidation were proposals near and dear to Dr. Halley's heart. He had first proposed two alternative budgets in January 2005 — the yellow budget that provided for closure of the Wickford Elementary School and school reconfiguration and consolidation and the white budget which sought to avoid these actions through a series of deep cuts in other services. He favored the yellow budget from the outset and even acknowledged that he had suggested that the historic Wickford Elementary School building be used for Town offices or School Committee offices (including his own). Yet, he left it to the School Committee to determine whether, through other cuts, it could avoid school closure, consolidation and *Page 9 
reconfiguration. Over the ensuing four months, he helped massage the budget process until yellow budget was in the fore. As he prepared the notice for the May 11, 2005 meeting, therefore, he knew that budget was poised for passage, subject only to the vagaries connected with a public vote on the controversial issue of closure of the Wickford Elementary School. He knew, too, that the School Committee itself (or at least some of its members) and members of the public had an interest in notifying the public of the purpose of that upcoming meeting and allowing for full public debate on the issues of school closure, consolidation and reconfiguration before allowing the School Committee to vote on school closure.
Yet, when he drafted the meeting notice, Dr. Halley did not tell the public that the School Committee would be discussing issues of school closure, reconfiguration and consolidation. He did not tell the public that the School Committee finally, after months of discussion, would vote on whether to close the Wickford Elementary School. He chose instead to simply state that the School Committee would convene a "worksession" to take up as "unfinished business" the "2005-06 school budget," thereby suggesting that the meeting was relatively unimportant and would be a mere continuation of budget discussions from prior meetings that had spanned months.
The notice Dr. Halley prepared for the May 11, 2005 meeting stood in marked contrast to other meeting notices that he had given earlier in the winter and spring of 2005 that at least mentioned both the budget and school consolidation on the agenda. See Notices dated Jan. 19, 2005, Feb. 9, 2005, Feb. 17, 2005, February 23, 2005, and March 3, 2005. It stood, too, in contrast to the notice for the meeting following the May 11, 2005 meeting which specifically listed the topic of consolidation of six elementary *Page 10 
schools on the agenda. Dr. Halley could not explain the greater specificity that he had employed in drafting these other meeting notices and implied that the more specific language was mere surplusage.
Moreover, Dr. Halley admitted that he drafted the notice of the May 11, 2005 meeting without researching the Act's notice requirements, without consulting the Department of Attorney General or reviewing its past Open Meetings Act decisions regarding notice, and without consulting the School Committee or its legal counsel. He viewed the volatile issue of school closure as being subsumed in the budget and the subject of extensive media coverage such that reference to unfinished budget business alone was sufficient to notify the public that the issues of school closure, reconfiguration and consolidation would be discussed and voted upon. As he testified at the first trial, he essentially sought to place any blame for not knowing about the May 11, 2005 School Committee meeting on the public and not on himself. In his view, the citizens had a duty to follow the ongoing budget discussions and attend regular School Committee meetings which would have alerted them to the agenda for the meeting at issue. He thereby insinuated that notice of meetings — required by law — should not even be necessary to inform the public of the deliberations and decisions of government.
 PROCEDURAL BACKGROUND
Following the second trial, the parties submitted post-trial memoranda and oral argument. This Court asked them to address specifically the question of the legal standard for determining a "willful or knowing" violation of the Rhode Island Open Meetings Act as that phrase is employed in R.I. Gen. Laws § 42-46-8(d). *Page 11 
Plaintiff argues that, based on Carmody v. R.I. Conflict of InterestComm'n, 509 A.2d 453 (R.I. 1986), to establish a willful or knowing violation of the Act requires proof that Dr. Halley, acting as agent of the School Committee, knew that the notice he gave violated the Act or that he showed reckless disregard for that question. See Pl's Mem. at 2-6. Using that standard, plaintiff alleges that Dr. Halley's conduct constituted a willful or knowing violation of the Act. Specifically, plaintiff claims that he knew of his obligations under the Act's notice provisions and that his past involvement drafting and interpreting regulations, his study of and prior experience interpreting the Act, and his knowledge of the importance of the issue of the closure of the Wickford Elementary School in the North Kingstown community should have heightened his inquiry into the adequacy of the notice that he provided the public of the May 11, 2005 School Committee meeting. Thus, his failure to research or seek counsel regarding the drafting of the notice demonstrated a reckless disregard for the question of whether the notice, in fact, violated the Open Meetings Act. In addition, plaintiff argues that Dr. Halley did not act reasonably or in good faith, as discussed in Carmody, because he realized the importance of the school closure issue within the community, and knew of the existence of the requirements of the Open Meetings Act, and still issued deficient notice to the public.
The defense agrees with plaintiff that to establish a willful or knowing violation of the Open Meetings Act, plaintiff must prove that Dr. Halley either knew or recklessly disregarded the fact that the notice did not specify the nature of the business to be discussed at the May 11, 2005 meeting of the School Committee, in violation of the Act. It argues, however, that, under the totality of the circumstances, he acted reasonably and *Page 12 
in good faith and, thus, the School Committee is immune from liability for a civil penalty. To support this argument, defendants cite the circumstances surrounding the notice, including the press coverage and public statements made by Dr. Halley to inform the citizenry of his position on school closure and consolidation before the May 11, 2005 meeting, the ordinary practice of using budget business to describe a variety of meeting topics, and the fact that large numbers of the public actually attended the subject meeting. According to the defendants, the "surrounding events or totality of the circumstances in this case strongly apprised the public of the nature of the business to be discussed at the May 11th meeting" and as a result "school closure was the budget discussion." Defs' Mem. at 12-14. Defendants argue that Dr. Halley could reasonably believe that the public notice did not contain a defect so obvious that he must have been aware of it.
 CONCLUSIONS OF LAW The Rhode Island Open Meetings Act provides, in pertinent part, as follows:
 The court shall award reasonable attorney fees and costs to a prevailing plaintiff, other than the attorney general, except where special circumstances would render such an award unjust.
 The court may issue injunctive relief and declare null and void any actions of a public body found to be in violation of this chapter. In addition, the court may impose a civil fine not exceeding five thousand dollars ($5,000) against a public body or any of its members found to have committed a willful or knowing violation of this chapter.
R.I. Gen. Laws § 42-46-8(d) (emphasis added). It thus grants prevailing parties in an Open Meetings Act case the right to recover reasonable attorney's fees and costs, "except where special circumstances would render such an award unjust." It also allows the court, in its discretion, to impose a civil fine of up to $5000 against a "public body or any *Page 13 
of its members" that the court finds has committed a "willful or knowing violation of [the Open Meetings Act]." Id.
The Act does not define a "willful or knowing" violation nor is there any case law from this jurisdiction which defines such a violation for purposes of the Open Meetings Act. As such, this case appears to be one of first impression with respect to this issue.
The Rhode Island Supreme Court has had occasion, however, to define the standard concerning a "knowing and willful"[6] violation of the law in other contexts. Initially, the Supreme Court was called upon to define that standard in the criminal realm. See State v. Contreras,105 R.I. 523, 253 A.2d 612 (R.I. 1969). In Contreras, the Supreme Court observed that neither the word "knowing" nor the word "willful" has a "single, fixed or uniform meaning." 105 R.I. at 537, 253 A.2d at 620. Their meanings, according to the Court, "will often vary depending on the context in which used." Id. (citations omitted). The Court then went on to define acting "knowingly" or "willfully," as used in criminal law, as acting "voluntarily and intentionally, and not because of mistake or accident or other innocent reason." Id. (citations omitted). The Court clarified that the word "willfully" does not imply an act done with the specific intent to do something which the law forbids unless the word is used in connection with offenses that are themselves wrong or that involve moral turpitude. Id. (citations omitted).
The Supreme Court first interpreted the "knowing and willful" standard in the civil context in Carmody v. R.I. Conflict of InterestComm'n, 509 A.2d 453 (R.I. 1986) (interpreting the "knowing and willful" standard of the Rhode Island Conflict of Interest *Page 14 
law). It declined — at one end of the spectrum — to interpret that standard as imposing strict liability, determining that proof of a knowing and willful violation requires more than mere proof of a statutory violation and more than proof that the person violating the statute knew that the statute was "in the picture." It likewise declined — at the other end of the spectrum — to interpret that standard as requiring proof of specific intent, determining that a violation of statute could be willful and knowing without proof that the person violating its terms entertained a bad purpose or evil intent.
Instead, the Supreme Court carved out a middle ground and adopted the definition of the standard articulated by the United States Supreme Court in Trans World Airlines, finding that a violation of statute is "knowing and willful" if:
 [the person violating the statute] either knew or showed reckless disregard for the question of whether the conduct was prohibited by that statute.
Carmody, 509 A.2d at 460 (quoting Trans World Airlines, 469 U.S. 111,128 (1985)); see also DiPrete v. Morsilli, 635 A.2d 1155, 1163 (R.I. 1994) (reaffirming Carmody and applying its definition of a knowing and willful violation to the Code of Ethics enforced by the Rhode Island Ethics Commission). While the Court in Carmody did not expressly define the concept of reckless disregard, a fair reading of the case suggests that a violation of statute would not be reckless (and hence not knowing and willful) if the person violating the statute had acted reasonably and in good faith. Carmody, 509 A.2d at 460 (citing Trans WorldAirlines, 469 U.S. at 113). The Rhode Island Supreme Court cautioned, however, that "where the mandate of the law is clear, . . . it is difficult to conceive of a violation that could be reasonable and in good faith." Id. at 461. In reliance on Laffey v. NorthwestAirlines, the Rhode Island Supreme Court defined *Page 15 
additional circumstances under which the violative conduct would not be reasonable: (1) where the person is "cognizant of an appreciable possibility that he [or she] may be subject to the statutory requirements and fails to take steps reasonably calculated to resolve the doubt"; and (2) where "an equally aware [person] consciously and voluntarily charts a course which turns out to be wrong." Id. at 460 (quoting Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 462 (D.C. Cir. 1976)).
In Trans World Airlines, the United States Supreme Court determined that the defendants acted reasonably and in good faith, and hence declined to find a knowing and willful violation, because they met with their lawyers and consulted with union representatives to determine whether their plan would violate the statutory provisions of the ADEA at issue in that case. 469 U.S. at 129-30. Conversely, inCarmody, our Supreme Court held that the defendant did not act reasonably and in good faith, and hence committed a knowing and willful violation of the Conflict of Interest statute, because he was aware that the law might apply to him, but failed to seek an opinion as to its applicability from either the Conflict of Interest Commission or a lawyer. 509 A.2d at 462. Thus, when these two cases are read together, it would seem that a party risks being found in willful or knowing violation of a statute when: (1) the obligations imposed by the statute are clear and that party nonetheless acts in violation of the statute; or (2) when that party knows that the statute might impose certain obligations but fails to take reasonable steps (such as securing the advice of counsel or the body enforcing the law) to resolve any doubts about whether the intended action or inaction is proscribed by the law.
Cognizant of these precepts, this Court must determine here whether Dr. Halley, acting as agent of the North Kingstown School Committee, committed a willful or *Page 16 
knowing violation of the notice requirements of the Open Meetings Act when he published the deficient May 11, 2005 meeting notice. To make this determination, this Court must decide whether he knew or showed reckless disregard for the question of whether the notice violated the Open Meetings Act, R.I. Gen. Laws 42-46-6(b), by describing "the nature of the business to be discussed" at that meeting as unfinished business regarding the school budget when he knew, in fact, that the School Committee would be discussing and voting upon his recommended closure of the Wickford Elementary School and discussing the broader issues of school consolidation and reconfiguration. Dr. Halley wants this Court to believe that, in giving this notice, he acted reasonably and in good faith. Based on the evidence of record, however, this Court must conclude otherwise.
The Open Meetings Act clearly requires that notice of a public meeting must inform the public of the "nature of the business to be discussed" at the meeting. R.I. Gen. Laws § 42-46-6(b). As stated by the Rhode Island Supreme Court in Tanner v. Town Council of East Greenwich,880 A.2d 784, 796-97 (R.I. 2005), this notice requirement "obligates [the] public body to provide fair notice to the public under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public of the nature of the business to be discussed or acted upon."
The notice Dr. Halley prepared fell woefully short of such a requirement, as it gave the public no information about the nature of the business that the School Committee actually intended to discuss and vote upon. There is nothing in the notice to alert the public to the fact that the School Committee would be discussing and voting upon the closure of the Wickford Elementary School or discussing the related issues of *Page 17 
school consolidation and reconfiguration. In such a circumstance, "where the mandate of the law is clear, . . . it is difficult to conceive of a violation that could be reasonable and in good faith."Carmody, 509 A.2d at 461 (applying standard articulated in Trans WorldAirlines, 469 U.S. at 128).
Moreover, based on the facts as found by this Court, it is inconceivable that Dr. Halley would not have been aware that there was at least an "appreciable possibility" that the notice he prepared violated the requirements of the Act. Id. (quoting Laffey,567 F.2d at 462). He was a student of the Act's requirements, he knew the importance of its notice provisions and the risks of not complying with them, and he knew that the meeting of which he was duty bound to give adequate public notice was of utmost interest to the citizens of North Kingstown. Like the defendant in Carmody, and unlike the defendants in Trans WorldAirlines, he did nothing to ensure his compliance with the dictates of the notice provisions of the Act or to resolve any doubts he may have had about those requirements — such as seeking the advice of counsel, the Attorney General's Department or the School Committee itself.See id.; Trans World Airlines, 469 U.S. at 129-30. Dr. Halley chose instead to "consciously and voluntarily chart a course" to afford the public as little notice as possible about the substance of the upcoming meeting, even less notification than he had given the public on other less controversial occasions. Carmody, 509 A.2d at 460 (quotingLaffey, 567 F.2d at 462). He chose to mischaracterize the meeting as a worksession simply to consider unfinished budget business — declining to inform the public that the issues of school closure, consolidation and reconfiguration would be discussed or that the School Committee would vote on whether to close the Wickford Elementary School. His conscious and voluntary decision to fashion the notice *Page 18 
in this misleading way then "turn[ed] out to be wrong." Id. Per the dictates of Laffey, as adopted by our Supreme Court inCarmody, therefore, his actions in giving notice can in no way be deemed to have been reasonable or in good faith. 509 A.2d at 462;567 F.2d at 465.
Furthermore, the fact that the notice Dr. Halley prepared is not only statutorily deficient but also contains a misstatement of material fact greatly buttresses this Court's conclusion in this regard. By failing to alert the public that the issues of school closure and consolidation were even on the table, and by suggesting instead that some generalized budget business from a prior meeting that had been left unfinished would be taken up again in a mere worksession, the notice, as found previously by this Court, was not only "inadequate and incomplete but misleading."Ohs v. North Kingstown School Committee, 2005 R.I. Super. LEXIS 132 (Aug. 10, 2005). Not only did it fail to entice the public to attend the meeting and to participate in the discussion and vote on critically important agenda items, it actually discouraged the public from attending by suggesting that the meeting was to be an uneventful worksession in which the School Committee simply would continue its prior unfinished budget discussions.
It is difficult to see how a notice that contains such a misstatement and that misleads the public could ever meet the test of reasonableness and good faith. See Tanner, 880 A.2d at 798 (holding that "misleading" notice can never comply with the statutory purpose of the Open Meetings Act).[7] Indeed, this Court would follow the lead *Page 19 
of the Oklahoma Supreme Court and hold that defective notice constitutes a willful violation of the Open Meetings Act when it "has the effect of actually deceiving or misleading the public regarding the scope of matters to be taken up at the meeting." Haworth Board of Education ofIndependent School District v. Havens, 637 P.2d 902, 904 (Okla. 1981) (citing the legislative policy of encouraging and facilitating an informed citizenry's understanding of the governmental processes, the court held that the deceptive and vague nature of a school committee meeting notice was likely to mislead the average reader, thus amounting to a willful violation of the Open Meetings Act).
The focus with this analysis, similar to the focus in imposing tort liability for even an innocent or negligent misrepresentation, is less on the intent of the person in making the misrepresentation and more on the effect of the misrepresentation on the people the law is designed to protect.[8] While the person conveying the information may not have intended to misrepresent, he or she nonetheless acted willfully and intentionally in making the representation. Liability is imposed for that willful conduct, even where there was no intent to deceive, because the misrepresentation had the effect of actually deceiving or misleading the intended recipients of the information. Obviously, if the *Page 20 
person made the misrepresentation intentionally or recklessly,[9] as opposed to negligently or innocently, the case for finding the conduct willful is even stronger.
Here, the evidence suggests that Dr. Halley prepared the notice with knowledge that it contained a misrepresentation of material fact. He knew that the notice described the upcoming meeting as a mere worksession to discuss unfinished budget business when its true intended purpose was to vote to close the Wickford Elementary School. He knew that by cloaking the controversial school closure issue in the benign trappings of unfinished budget business, it would lessen the chance that the meeting would be attended by a large organized constituency opposed to school closure and increase the chance that the School Committee would vote to close the school and approve the budget he advocated.
Even assuming, arguendo, that he did not intend to mislead the public, this evidence suggests that Dr. Halley issued the notice with reckless disregard for the question of whether it was likely to deceive or mislead the public or, at a minimum, that he should have known that it was likely to deceive or mislead. After all, he was a scholar of the Open Meetings Act, he was aware that the intent of the Act was to require public officials to inform the public of the operations of government, and he was aware that the School Committee had been charged with repeated violations of the Act in the past. *Page 21 
Although he could have solicited the advice of others regarding the content of the notice he prepared, he chose not to. He issued a notice that, even to a layperson, obviously failed to disclose to the public the known intended purpose of the meeting — a meeting that obviously was of great interest to many citizens, especially to plaintiff and those other parents, students, teachers and staff who comprised the Wickford Elementary School community.
Moreover, regardless of the degree of Dr. Halley's culpability in misrepresenting the nature of the business that the School Committee intended to discuss and vote upon at the May 11, 2005 meeting, the notice had the effect of "actually deceiving or misleading the public regarding the scope of matters to be taken up at that meeting."Id. To allow such notice to be classified as anything other than a willful or knowing violation of the notice provision of the Open Meetings Act when it blatantly failed to ensure that the "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy," as mandated by R.I. Gen. Laws § 42-46-1, would undermine both the letter and the spirit of the Act. Id.
In arguing that he issued the notice reasonably and in good faith, Dr. Halley attempts to deflect this Court's attention away from both the substantive provisions of the Open Meetings Act and the substance of the notice he prepared. He argues that: (1) superintendents with whom he had consulted after the filing of this litigation suggested to him that they use the term "budget business" in school committee meeting notices to subsume a variety of topics to be discussed by the school committee such that it was reasonable for him to conclude that the issues of school closure, consolidation and *Page 22 
reconfiguration did not need to be specifically stated in the meeting notice; and (2) the public was well aware of the substance of the upcoming May 11, 2005 School Committee meeting and attended the meeting in large numbers because of widespread media coverage that included editorial pieces written by him and others such that his failure to provide more particularized notice was reasonable.
These arguments, however, are nothing more than a weak attempt at post-hoc rationalization for giving deficient notice. The views of other superintendents, solicited after the fact, and the independent actions of the media in informing the public cannot cure the statutory deficiencies in the notice at issue nor can they make reasonable, after the fact, that which was not reasonable or published in good faith at the time.
Dr. Halley knew how important this meeting was to the public and he knew the risk to planned school closure and consolidation that could result from his flagging its importance through proper notice. He did not know, at the time that he prepared the notice, whether it comported with meeting notices published by other superintendents, what the media would publish about the upcoming meeting or how many people would attend. He thus cannot hide behind the views of other superintendents (who he did not establish at trial would have given the notice he gave under like circumstances) nor can he hide behind the wide scale media coverage of the meeting to attempt to cure a meeting notice that he knew or should have known was likely to deceive or mislead the public as to the purpose of the meeting and failed to give the citizens of North Kingstown the notice to which they were legally entitled and which they unquestionably deserved. Under the totality of the circumstances, even inclusive of those circumstances upon which he relies in an attempt to justify his deficient notice, therefore, his act of issuing *Page 23 
notice of the May 11, 2005 meeting that was violative of the Open Meetings Act must be deemed to have been willful or knowing.
Here, the School Committee employed Dr. Halley as the Superintendent of Schools and lawfully delegated to him, as its agent, the responsibility of giving notice of its meetings to the public under the Open Meetings Act.[10] See Mellor v. Clancy, 540 A.2d 1278 (1987) (finding that the Superintendent of Schools may be properly characterized as an administrative agent and employee of the School Committee). As such, Dr. Halley's conduct in giving notice — here a willful or knowing violation of the Open Meetings Act — binds the School Committee. Id. (holding municipality liable for the tortious acts of its Superintendent of Schools); see also Barrett v. Lode, 603 N.W.2d 766
(Iowa 1999) (finding that liability under the Open Meetings Act can attach to a school board for the actions of a superintendent of schools who acts on its behalf and with its knowledge, particularly where there is no evidence that the board attempted to dissuade him from his course of action). To rule otherwise would allow Dr. Halley to act with impunity in carrying out the statutory duties imposed on the School Committee under the Open Meetings Act that were delegated to him by that public body.[11] *Page 24 
 THE REMEDY
Having found a willful or knowing violation of the Open Meetings Act, this Court next must craft an appropriate remedy. Plaintiff asks this Court to fine the School Committee in the amount of $5000. Defendants respond that no such penalty may be imposed because Dr. Halley did not act willfully or knowingly. As the prevailing party in Ohs I andOhs II, plaintiff also seeks an award of attorney's fees in the amount of $30,191.50. While the defendants deny a willful violation of the Open Meetings Act, they do not otherwise challenge the attorney's fees requested by plaintiff.
 Civil Penalty
The Open Meetings Act grants the Court discretion to impose a civil fine up to $5000 against a public body or any of its members found to have committed a willful or knowing violation of the Act. R.I. Gen. Laws § 42-46-8(d). As Dr. Halley acted as an authorized agent and employee of the School Committee at the time he gave notice, this statute empowers this Court to impose such a penalty against the School Committee for the acts of its agent. Id.[12]
Imposition of a civil penalty serves two primary functions: it punishes a public body, its agents or any of its offending members for a willful or knowing violation of the Act, and it acts to deter such entity or persons from future violations. It is a most appropriate remedy for an egregious violation of the Open Meetings Act that is reflective *Page 25 
of a pattern of failing to inform the public of the deliberations and decisions of government.
There is good reason here to punish the willful violation through imposition of a civil fine. The notice of the May 11, 2005 School Committee meeting that Dr. Halley published not only failed to adequately describe the nature of the business to be discussed at the meeting, in violation of the Act, but it acted to mislead the public. It reflected a conscious effort to discourage public participation in the School Committee's consideration of an issue of high public importance — the closure of an historic local elementary school.
In addition, there is a crying need, given the history of violations of the Open Meetings Act by the School Committee during Dr. Halley's tenure as Superintendent of Schools, to impose a fine as a way to deter future violations of the Act by the School Committee. See Decision at 5-7 n. 2-5, supra. Although many of these violations were investigated, decided, and posted following the notice of the May 11, 2005 meeting, they demonstrate a blatant disregard by the School Committee of the Open Meetings Act. They show a pattern and practice of giving the people little notice and information about the deliberations and decisions of the School Committee.[13] Perhaps most disturbing, they *Page 26 
appear to reflect a philosophy, on the part of Dr. Halley and other members of the School Committee, that they know best and that the people are an impediment to governing.
For all of these reasons, this Court believes that the imposition of a civil fine is in order. This Court wants to encourage the opposite philosophy — one that ensures, as the Open Meetings Act dictates, that the "public business [of the North Kingstown School Committee] be performed in an open and public manner and that the citizens [of North Kingstown] be advised of and aware of the performance of [its School Committee members] and the deliberations and decisions that go into the making of [its] public policy." Id. § 42-46-1. The people should not be viewed as an impediment to good government, but as guarantors of it.
This Court thus will order imposition of a civil fine in the maximum amount allowed by law of $5000 against the School Committee. In so doing, however, this Court does not wish to unduly penalize the taxpayers of North Kingstown. It wants, at rock bottom, to try to impose the most meaningful remedy — that of trying to guarantee future compliance by the School Committee with the Open Meetings Act in the interest of encouraging an informed and involved citizenry at all of its meetings. Accordingly, this Court will agree to vacate its order imposing a civil penalty for willful conduct upon proof that the School Committee, with the input of plaintiff and the public, has adopted a policy, within 60 days, to ensure it will comply strictly with the mandates of the Open Meetings Act in the future.
 Attorney's Fees
Under the Open Meetings Act, this Court is obligated to award a prevailing party an award of reasonable attorney's fees unless "special circumstances would render such *Page 27 
an award unjust." R.I. Gen. Laws § 42-46-8 (d). These fees may be awarded even absent a finding of a willful or knowing violation of the Act. Id. Nonetheless, this Court must ensure that any award of fees is "proportional to the breach and the effect thereof." Tanner,880 A.2d at 801. The provision allowing for an award of fees to prevailing parties under the Act is meant to put teeth into its requirements; knowing that monies in the public fisc are at risk for violations of the Act, it encourages public officials to comply with the mandates of the Act, while at the same time providing aggrieved members of the public with affordable access to the courts to hold their public officials accountable for conduct in violation of the Act.
Plaintiff is the prevailing party in Ohs I and Ohs II. To secure the injunctive relief that this Court awarded in Ohs I, and the penalty it imposed in Ohs II, she had no choice but to file her complaint, through private counsel, under the Open Meetings Act in this Court; filing a complaint with the Attorney General might have been more cost-effective and resulted in the same declaratory relief, but it would not have achieved timely resort to this Court to enjoin implementation of the May 11, 2005 school closure decision or the injunctive relief and civil penalty that this Court ultimately ordered. See R.I. Gen. Laws §42-46-8; see also n. 1, supra.
Moreover, the School Committee, even when faced with the well-grounded complaint filed by plaintiff in this case, did nothing to alter course. It made the decision, notwithstanding the legitimate views of plaintiff that its membership and the public had not received proper notice of the May 11, 2005 meeting, to defend the litigation in Ohs I, rather than taking the simple, cost-effective step of re-voting the issue of school closure, after fair notice to the public, to ensure the widest possible public debate on that issue. *Page 28 
Even after plaintiff prevailed in Ohs I, the defendants did not recognize plaintiff as being entitled to reasonable attorney's fees in that action as the prevailing party and continued to defend plaintiff's claim of a willful or knowing violation of the Act. While it is certainly the right of the defendants to defend these claims, when they choose to do so and then fail to prevail, they must accept the fact that one of the costs of their decision to defend is the attorney's fees incurred by plaintiff to pursue the litigation.
Furthermore, Dr. Halley did not merely fail to give adequate notice under the Act, but he knowingly gave misleading notice in willful violation of the Act. The violation was not an isolated occurrence, but reflective of a pattern of secrecy on the part of Dr. Halley and the School Committee, about which they had been warned in the past, that kept the public out of its deliberations and decisions. The violation adversely affected the ability of the Wickford Elementary School Parent Teacher Organization to educate and mobilize its membership and discouraged public participation in the critical school closure decision. It necessitated a re-vote on the issue of school closure and imposition of a fine to deter future misconduct.
As such, this Court finds that plaintiff's request for attorney's fees is "proportional to the breach and the effect thereof."Tanner, 880 A.2d at 801. There is no evidence of "special circumstances that would render such an award unjust." R.I. Gen. Laws § 42-46-8(d). As plaintiff's request for fees is supported by affidavit, and as defendants do not take issue with the reasonableness of her fee request, this Court will award plaintiff, as the prevailing party in Ohs I andOhs II, reasonable attorney's fees in the amount of $30,191.50 to be paid by the North Kingstown School Committee. *Page 29 
Counsel shall confer and submit to this Court forthwith for entry an agreed upon form of order and judgment that conforms to this Decision.
[1] By statute, any citizen who is aggrieved as a result of a violation of the Open Meetings Act may file a complaint with the Attorney General within 180 days from the public approval of the minutes of the meeting at which the alleged violation occurred or, in the case of an unannounced or improperly closed meeting, within 180 days from the public action of a public body revealing the alleged violation, whichever is greater. R.I. Gen. Laws § 42-46-8(a) (b). The Attorney General is required to investigate the complaint and, if it is determined to be meritorious, may file a complaint in the Superior Court against the public body. Id. § 42-46-8(a). Alternatively, the complainant may retain private counsel and file a complaint in the Superior Court, either without first seeking relief from the Attorney General but within the same timeframe applicable to a complaint filed with the Attorney General, or within 90 days of the Attorney General's decision declining to file suit in the Superior Court or 180 days of the alleged violation, whichever occurs later. Id. § 42-46-8(c). The Superior Court is empowered to grant injunctive relief, declare null and void the actions of a public body found to have violated the Act and impose a civil fine against a public body or any of its members found to have committed a willful or knowing violation of the Act. Id. §42-46-8(d).
[2] See, e.g., Mudge v. North Kingstown School Committee, OM 05-05 (June 24, 2005) (Mudge I) (raising thirty-eight complaints alleging,inter alia, that: (1) the School Committee illegally entered into Executive Session to discuss the Superintendent's job performance when public notice stated the discussion was the failure of the Superintendent to provide financial information; (2) the minutes of the June 25, 2003 meeting of the School Committee were not made available to the public; (3) some or all of the members of the School Committee were not allowed to participate in contract negotiations and that the Subcommittee for Teacher Negotiations met without following the requirements of the Act; (4) the meeting held on May 21, 2003 was not properly advertised; (5) the School Committee failed to give proper notice of its May 28, 2003 discussion to reconfigure the school district; (6) the School Committee had not disclosed a vote held during its May 28, 2003 Executive Session concerning a student grievance; (7) the vote to extend the Superintendent's contract was not publicly discussed but taken in closed session; (8) the June 11, 2003 Executive Session was improper because the matter considered therein was not the matter about which the public was given notice; (9) the School Committee conducted a vote by computer e-mail but the vote was never recorded in the School Committee minutes; (10) proper notice was not given for a vote taken to ratify a prior vote for the replacement of roofs; and (11) matters addressed at the September 10, 2003 meeting were not properly noticed under the Act); Mudge v. North Kingstown School Committee, OM 06-34 (March 20, 2006) (Mudge II) (alleging that the School Committee violated the Open Meetings Act by: (1) voting to approve the appointment of a school principal on Feb. 25, 2004 without posting the appointment on the public notice; (2) voting to approve the appointment of the Supervisor of Transportation on Jan. 21, 2004, without posting the appointment on the public notice; and (3) failing to include information in the minutes of the Feb 11, 2004 meeting); Mudge v. North KingstownSchool Committee, OM 06-38 (April 1, 2006) (Mudge III) (alleging that the School Committee violated the Open Meetings Act when it addressed matters not properly advertised in advance of the meeting held on April 27, 2005.)
[3] See, e.g., Mudge I, OM 05-05 (June 24, 2005) (finding the School Committee's failure to disclose its vote violated the Open Meetings Act); Mudge II, OM 06-34 (March 20, 2006) (finding School Committee violated the Open Meetings Act); Mudge III, OM 06-38 (April 17, 2006) (finding that the School Committee violated the Open Meetings Act when it failed to advertise by any means the positions for which appointments would be made); see also Benson v. North Kingstown SchoolCommittee, OM 07-01 (Feb. 21, 2007) (finding that the School Committee violated the Open Meetings Act by failing to post proper notice of its meeting and then convening the meeting anyway).
[4] See Mudge II, OM 06-34 (March 20, 2006); Mudge III, OM 06-38 (April 17, 2006).
[5] See Benson v. North Kingstown School Committee, OM 07-01 (Feb. 21, 2007).
[6] It should be noted that the former Conflict of Interest law codified a "knowing and willful" standard while the Open Meetings Act speaks of a "willful or knowing" standard. Cf. R.I. Gen. Laws § 36-14-12-13 (repealed) with § 42-46-8(d) (emphasis added). Those phrases, however, are often used interchangeably. See DiPrete v.Morsilli, 635 A.2d 1155, 1163 (R.I. 1994) (citing Carmody v. R.I.Conflict of Interest Comm'n, 509 A.2d 453, 460-61 (R.I. 1986)).
[7] As the Rhode Island Supreme Court stated, "[c]learly, fair notice to the public under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public of the nature of the business to be discussed or acted upon, is not met bymisleading information about the actions to be taken at a meeting of apublic body. Tanner, 880 A.2d at 798 (emphasis added). "It goes without saying, that `misleading' notice never can comply with the statutory purpose of the [Open Meetings Act] that `public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy.'" Id. at 798 n. 16 (quoting R.I. Gen. Laws § 42-46-1).
[8] See, e.g., Halpert v. Rosenthal, 267 A.2d 730, 734 (R.I. 1970) (holding that it is not necessary that the party making the misrepresentation should have known that it was false and that innocent misrepresentation is sufficient, for though the representation may have been made innocently, it would be unjust and inequitable to permit a person who has made false representations, even innocently, to retain the fruits of a bargain induced by such representations); Robinson v.Omer, 952 S.W.2d 423, 427 (Tenn. 1997) (defendant can be liable for negligent misrepresentation where he supplies faulty information meant to guide others, fails to exercise reasonable care in obtaining or communicating the information and the person for whom the information is intended justifiably relies on it).
[9] See, e.g., Asermely v. Allstate Ins. Co., 728 A.2d 461 (R.I. 1999) (holding that for fraudulent misrepresentation or deceit to be found, the complaining party must show not only that the defendant had an intention to deceive, but that the complainant detrimentally relied upon the fraudulent representation); Zutz v. Case Corp., 422 F.3d 764
(8th Cir. 2005) ("reckless misrepresentation occurs `when the representer asserts a fact of his [or her] own knowledge without knowing whether it is true or false'") (quoting Florenzano v. Olson,387 N.W.2d 168 (Minn. 1986) (Simonetti, J., concurring)); Restatement of Torts 2d § 526 ("A misrepresentation is fraudulent if the maker: (a) knows or believes the matter is not as he [or she] represents it to be, (b) does not have the confidence in the accuracy of [the] representation that he [or she] states or implies, or (c) knows that he [or she] does not have the basis for [the] representation that he [or she] states or implies.").
[10] See R.I. Gen. Laws § 16-2-9 (a)(12)(23) (granting school committees power to employ a superintendent of schools and to delegate, consistent with law, any responsibilities to the superintendent as the school committee deems appropriate); R.I. Gen. Laws § 16-2-11 (a)(4) (designating superintendent of schools as the chief administrative agent of the school committee to perform any duties assigned to him or her by the school committee and all duties mandated by this statute, including the duty to comply with all provisions of state law).
[11] As our Supreme Court stated in Mellor: "It would be fatuous to conclude that an employee of a school department, operating under a budget funded by a municipality, under a charter listing the school department as a department of that town, and carrying out functions mandated by law, is not an agent of that municipality, and that that same municipality cannot be called to justice when the employee's tortious conduct gives rise to a cause of action." Query whether the School Committee should delegate unbridled authority to give notice under the Open Meetings Act to an unelected public official who may have divergent interests from some or all of the members of the School Committee?
[12] The Act allows the Court to impose a civil penalty against a "public body" or its "members." R.I. Gen. Laws § 42-46-8(d). As Dr. Halley is not a member of the School Committee, this Court is not empowered to fine him in his individual capacity. The statute does allow this Court, however, to impose a civil penalty against the School Committee itself for the acts of Dr. Halley as its agent. While Donald DeFedele is a defendant in this action in his capacity as Chairman of the School Committee, plaintiff does not appear to be asking for relief against him nor does this Court see any evidence to support such an argument.
[13] This practice is illustrated not only by the history of violations of the Act, but by the actions of the School Committee at its April 27, 2005 meeting — the meeting immediately preceding the meeting at issue here. The School Committee almost voted the issue of school closure at that meeting, without proper notice to the public, after Dr. Halley made a PowerPoint presentation in support of closure. Before taking that vote, Melvoid Benson, a School Committee member, asked Dr. Halley whether his PowerPoint presentation on these issues had been presented to parent teacher organizations or others and "suggested that the committee forego voting t[hat] evening on the topic, and give the public a chance to come in with their ideas even if there ha[d] to be a special meeting to make a decision." Ohs, 2005 RI LEXIS 132 (Aug. 10, 2005). Yet, in the interim, neither Dr. Halley nor the School Committee did anything to further educate the Wickford Elementary School Parent Teacher Organization, other parent teacher organizations or members of the public about the issues of school closure, consolidation and reconfiguration prior to the May 11, 2005 meeting. Dr. Halley then gave the fateful notice, without proper notice to the public, and the vote on school closure nonetheless ensued. *Page 1