DECISION
This matter comes before the Court on the appeal of abutting property owners ("Appellants") from a decision of the Zoning Board of Review of the Town of South Kingstown ("Board") to approve a special use permit allowing the Animal Rescue League of Southern Rhode Island (the "ARL") to construct a new animal shelter on Lot 27, located at 506B Curtis Corner Road in Wakefield, Rhode Island. The Board approved a special use permit to build the *Page 2 
new shelter on March 22, 2006 after conducting hearings on the matter on June 22, 2005; August 24, 2005; September 22, 2005; December 21, 2005; February 1, 2006 and February 15, 2006. Appellants timely filed this appeal on April 10, 2006. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
The ARL is a non-profit corporation dedicated to locating permanent, suitable homes for dogs and cats, the owners of which cannot keep them and thus surrender them to the ARL. (Tr. 6/22/05 at 14). The ARL provides housing and care for these pets until such time as a permanent home is found. Id. It also promotes the humane treatment of all animals through education outreach, and provides volunteer opportunities for community residents. Id. The ARL has been performing these functions at its facility at 506B Curtis Corner Road since 1971 and services about four hundred animals per year.[1] Id. at 13, 52. The ARL's property is located in an R-20 Zone, which is a "Medium High Density Residential District," that has historically contained mixed uses that "should be permitted to continue and to expand subject to strict environmental controls." South Kingstown Zoning Ordinance § 101.A (the "Ordinance"). Most of the houses on Curtis Corner Road are two-story colonials containing four bedrooms and two or two and one-half bathrooms.
Ruth Gobeille, president of the ARL's Board of directors, testified that the existing building is an old 3380 square foot cement block and has the capacity to house 60 cats and 33 dogs. Id. at 18, 28. Most of the ARL's administrative functions are conducted off-site because the building contains only one small office. Id. at 17. The building's lack of space is inimical *Page 3 
to the health of the animals as there is a single isolation room for animals which have a contagious disease, are pregnant or nursing, or are being quarantined to check for rabies. Id. at 19. When the inside dog kennels must be cleaned, the dogs are put into outside dog runs regardless of the weather, and in the winter these can become icy, causing the dogs to slip and injure themselves. Id. at 21-22. Because there is nowhere for them to run, play, or exercise, the cats must live in cages, only being let out when a staff member or volunteer has time to groom or play with them. Id. at 21. While five veterinarians volunteer their services at the shelter, the only place for them to conduct examinations is a small table in a hallway where food, towels, and uniforms are stored. Id. at 18, 27. In sum, the existing facility is small and cramped with the lack of space causing stress for the animals, staff, and members of the public who enter the building. Id. at 24.
In its application for a special use permit, the ARL proposed constructing a new thirty two and one-half foot tall, one and one-half story building with a 9236 square foot footprint to replace its old facility. Id. at 23. The ARL also submitted several alternative building plans for the Board's review. Each of these plans complied with all of the South Kingstown Zoning Ordinance's dimensional and setback requirements.
The proposed building would provide much better conditions for both the animals and the staff, as well as comply with draft regulations that have been proposed by the Rhode Island Department of Environmental Management. The new dog runs are located entirely indoors, eliminating the problem of having to put the dogs outside even in inclement weather.Id. at 23. Cats will no longer be kept in cages and will instead live in rooms with glass walls that allow in sunlight. Id. at 24. There will also be enough space for the cats to play and exercise. Id. *Page 4 
The new building will contain a treatment room in which the veterinarians will work and separate isolation rooms for maternity, infectious diseases, and more serious issues such as rabies.Id. at 27-28. There will also be a space to properly store vaccines and medicines and a climate controlled storage facility for incoming food deliveries. Id. at 26-27. There will be separate areas for people coming in to surrender their pets and those that wish to view animals for adoption. Id. All of the ARL's administrative functions will be brought under one roof, ending the need for the executive director and office manager to conduct their work off-site. Id. at 25-26.
Stephen Jensen, whom the Board recognized as an expert architect specializing in animal shelter design, also testified before the Board on the ARL's behalf. Mr. Jensen is the architect responsible for the design of the proposed facility. Id. at 70. Mr. Jensen testified that the building would utilize interior soundproofing, as well as insulation around the air-handling equipment in order to keep animal and machine noise inside the building and away from the neighbors. Id. at 72. In Mr. Jensen's opinion, neither the building's equipment nor the animals living within would produce any noise-related impact on the surrounding properties. Id. at 86. He also testified that the building would have a residential or domestic look and would actually improve the general character of the neighborhood. Id. at 75, 101.
The next witness that appeared before the Board was William Dowdell. Mr. Dowdell is the project manager for the ARL's proposed facility, and the Board recognized him as an expert in professional engineering. Tr. 8/24/05 at 6. Mr. Dowdell stated that the proposed design provided adequate ingress and egress to the property. Id. at 9. He also testified that there would be no issues relating to utility access, including water, waste disposal, gas, and electricity. Id. at 11-13. Mr. Dowdell also told the Board that the proposed design complied with height and *Page 5 
setback requirements, and that in his opinion, the building would not adversely affect the neighboring homes. Id. at 14-15.
The Board also heard testimony from John Carter, the landscape architect who had designed the landscaping for the ARL's proposal. After being recognized as an expert, Mr. Carter testified that the landscaping plan incorporated both acoustical and visual buffers, reducing the noise impact of the building, as well as helping to conceal it from neighboring properties. Id. at 47. He also stated that the design would not interfere with emergency vehicles' access to the building, that the plan provided adequate parking, and that the landscaping would be compatible with, and even enhance, the surrounding lots. Id. at 32-33, 44. Martha Heald, a traffic engineer, further stated that the larger building would have a minimal impact on the amount of traffic in the area. Id. at 90-92.
The Board then heard from Anthony Lachowicz, the former planning director of South Kingstown. The Board found that Mr. Lachowicz is an expert in planning and land use. Id. at 96. Mr. Lachowicz testified that in his opinion, the ARL's proposal was consistent with South Kingstown's Comprehensive Plan and its Zoning Ordinance. Id. at 105-106. Mr. Lachowicz derived his opinion in part from the Zoning Ordinance's designation of an R-20 Zone as a high density residential district which contains mixed uses that should be permitted to expand subject to strict environmental controls. Id. at 106-107. Mr. Lachowicz noted that the Zoning Ordinance permits twenty-two nonresidential uses in an R-20 Zone either as of right or by special use permit. Id. at 103. Mr. Lachowicz also testified that his opinion was influenced by the Planning Board of South Kingstown's recommendation of approval and its finding that the grant of a special use permit would not alter the general character of the surrounding area or impair the intent or purpose of the Zoning Ordinance or Comprehensive Plan. Id. at 108. *Page 6 
Nathan Godfrey provided testimony as to the impact the proposal would have on the values of surrounding properties. Id. at 142. As a certified appraiser, the Board qualified Mr. Godfrey as an expert in real estate.Id. Mr. Godfrey stated that he prepared a report based on his personal examination of the neighborhood, the Zoning Ordinance and Comprehensive Plan, as well as analysis of market data in South Kingstown.Id. at 143-145. Mr. Godfrey paid particular attention to Tiptop Kennels, a similar facility which is located next to a new subdivision that is an active part of the single-family real estate market.[2] Id. at 145-147. Mr. Godfrey testified that in his opinion the market data showed that approval of the ARL's application would have no impact on the use or value of the surrounding properties. Id. at 147.
After hearing from Mr. Godfrey, the Board heard testimony in opposition to the ARL's proposal. Edward Pimentel, the Zoning Officer for the City of East Providence, as well as the consulting Town Planner for the Town of Barrington, was the first witness for the Appellants. Tr. 9/22/05 at 60. The Board first found Mr. Pimentel to be an expert planner. Id. at 61-62. Mr. Pimentel testified that in his opinion the South Kingstown Zoning Ordinance contained "clear error" in its provisions allowing the expansion of special uses and that the actual intent behind the Ordinance was to enforce a cap on any such expansion.Id. at 64-65. He also argued that the incorporation of office facilities into the proposed new building constituted a second principal use, rendering the proposal ineligible to receive a special use permit as office use is prohibited in an R-20 Zone. Id. at 66-67. Responding to questions posed by a Board member, Mr. Pimentel stated that he had never been inside the ARL's current facility, nor had he seen the floor plans of the proposed facility. Id. at 69-70, 76. *Page 7 
Finally, many of the neighboring property owners testified in opposition to the proposed facility and objected to the granting of a special use permit.[3] In general, the neighbors stated that animal noise from the existing facility, namely barking dogs, was not overly bothersome. The neighbors were most concerned about the visual impact of the building on their properties, sharing the opinion that the proposed height was too high and that a building with such a large footprint would not be compatible with the general character of the neighborhood. Abutting owners also felt that their views from their own property into the ARL's lot would be less aesthetically pleasing due to the construction of a large, commercial building. Several additionally stated that they did not expect the ARL to ever seek to construct a larger facility on the lot. Each of the neighbors believed that his or her property values would decrease if the Board granted the ARL's application.
After the conclusion of the public hearings, the Board met on February 1, 2006 and February 15, 2006 to consider the ARL's application. Taking into account the concerns of the neighboring property owners, the Board's discussion focused on the height of the proposed building. On March 22, 2006 the Board unanimously granted a special use permit for the construction of a building substantially similar to one of the optional plans submitted by the ARL.
The approval is for a one-story building with a footprint no larger than 10,664 square feet and a pitched roof that is not to exceed 26 feet in height. The Board also imposed various conditions on its approval in order to reduce the impact on the neighboring properties. These conditions included reducing the number of parking spaces, imposing a maximum number of dogs and cats that could be accommodated at any one time, and requiring that the building utilize *Page 8 
residential siding and window and door details. The Board issued its written decision on March 23, 2006. This timely appeal followed.
 Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." G.L. 1956 § 45-24-69(d). This Court may reverse or modify the zoning board's decision "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are
 (1) In violation of constitutional, statutory, or ordinance provisions
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Id.
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. Rhode Island State Labor RelationsBoard, 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977). See also Mauriciov. Zoning Board of Review of the City of Pawtucket, 590 A.2d 879, 880
(R.I. 1991). When a question of statutory interpretation is presented, an appellate court conducts its review of that issue de novo.Tanner v. Town Council, 880 A.2d 784, 791 (R.I. 2005). *Page 9 
As to this Court's review of the Board's factual findings, "in reviewing a decision of a zoning board of review, the trial justice `must examine the whole record to determine whether the findings of the zoning board were supported by substantial evidence.'" Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (quotingToohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980)) (other quotations omitted) (emphasis added). Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance." Id. In short, if an examination of the record reveals that the zoning board's decision provided some credible or competent evidence in support of its conclusion, this Court shall not disturb the board's determination.
 Analysis
The Granting of the Special Use Permit
Appellants' main argument on appeal is that the Board exceeded its statutory authority in granting the special use permit allowing the ARL to build a new, larger facility.[4] The Zoning Enforcement Officer determined that the ARL's current use of the property is substantially similar to Use Code 5 in § 301 of the South Kingstown Zoning Ordinance (the "Ordinance"), "boarding animals." When the ARL originally built its facility, boarding animals was a permitted use in an R-20 Zone by special exception.[5] Subsequent to the grant of the ARL's *Page 10 
original special exception, the Ordinance was amended and currently boarding animals is a prohibited use in an R-20 Zone. See Ordinance § 301. According to the Ordinance, the Board is only empowered to grant a special use permit if "the special use is specifically authorized by this Ordinance." Ordinance § 907.A(2)(a). Appellants contend that because boarding animals is no longer a permitted use in an R-20 Zone, then such use cannot be "specifically authorized" by the Ordinance. In fact, appellants argue, the use is expressly prohibited, and the Board's approval of the ARL's application was in excess of statutory authority.[6]
The interpretation of the Ordinance is a question of law which this Court shall review de novo. Section 907.A(2)(a) of the Ordinance sets out the requirements for obtaining a special use permit and states in relevant part that to grant a special use permit, the Board must find on the record "[t]hat the special use is specifically authorized by this Ordinance" and must state "the exact subsection of this Ordinance containing the jurisdictional authorization." In this Court's opinion, Appellants' argument that the ARL cannot be granted a special use permit because "boarding animals" is now a prohibited use in an R-20 Zone is in derogation of the plain language of the statute. The Ordinance does not state that the use must be specifically authorized by the Use Regulations Table found in § 301, but rather by reference to the Ordinance as a whole. As such, it is appropriate to look to other sections of the Ordinance to determine whether the grant of a special use permit in these circumstances is allowable.
Section 200.C states that:
 [a]ny use of land or of a structure which was lawfully in existence at the time of the adoption of this Ordinance or any amendments thereto shall be nonconforming by use, notwithstanding that such a use is not permitted by the district regulations of this Ordinance, or *Page 11 
any amendments thereto, for the zoning district in which the use is located.
The record in this case is clear that the ARL's original use was lawful as it was granted a special exception. It is equally apparent that boarding animals is now a prohibited use in an R-20 Zone. Accordingly, such use would ordinarily be considered nonconforming by use.
However, other provisions of the Ordinance explicitly state that in the circumstances present in the instant case, the ARL's use is not considered a nonconforming use. Section 200.E provides that a
 nonconforming building, structure, sign, or parcel of land or the use thereof, which exists by virtue of having received a variance or a special use permit (or a special exception) granted by the Zoning Board, shall not be considered a nonconformance for the purpose of this article. . . [r]ather, such. . . use thereof, shall be considered a use by variance or a use by special use permit.
The Ordinance further states that "[a]ny moving, relocation, addition, enlargement, expansion, intensification or change of such. . . use . . . shall require a further variance or special use permit from the Zoning Board." Id. The plain meaning of this section as applied to this case is that ARL's use of its facility does not constitute a nonconforming use but rather continues as a use by special use permit.
The Ordinance reaffirms and reinforces § 200.E in § 907.C. Section 907.C is entitled "Continuation or extension of special uses" and provides as follows:
 [a] special exception or special use permit heretofore or hereafter granted by the Zoning Board of Review may not be extended or enlarged except by the granting of a special use permit by the Board. It is hereby declared that any special exception or special use permit heretofore granted under any Zoning Ordinance of the Town of South Kingstown, shall continue to be a special exception or special use permit, and shall not be construed to become, by the passage of this or any subsequent Ordinance, a nonconforming use or structure. (Emphasis added.) *Page 12 
Because a special use can never be transformed into a nonconforming use, this section can be said to essentially "freeze" the Use Table found in § 301 as of the date that the original special use permit or special exception was granted. Instead of examining the Ordinance as it stands now, it is necessary to look at the statute as it existed in 1969 when the ARL made its first application to the Board. At that time "boarding animals" was allowed in an R-20 Zone with a special exception. Therefore, ARL's use is deemed to continue as a special exception despite the fact that "boarding animals" is now a prohibited use under § 301.[7]
The plain meaning of the Ordinance as applied here is that under § 200.E, the ARL's operation of an animal shelter on its property never became a nonconforming use despite the amendment to the Ordinance. Rather, it remained a special use pursuant to § 907.C and is thus eligible to be expanded by the grant of a further special use permit. While the Board's decision would perhaps have been clearer had it referred to both §§ 200.E and 907.C as authorizing it to grant a special use permit, this Court nevertheless finds that the granting of a special use permit was specifically authorized by the Ordinance and that the Board did not act in violation of Ordinance provisions in specifying only §§ 200.E and 907.A(2) as providing it with authority to grant the ARL's application. *Page 13 
Substantial Evidence
Appellants next argue that the Board did not have before it substantial evidence to find that its "granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan of the Town" as required by § 907.A(2)(c).[8] The ARL argues that all of the evidence adduced at the Board's hearing — including expert testimony — constitutes substantial evidence, thereby allowing the Board to find that the proposed construction will not alter the general character of the surrounding area or impair the intent or purpose of the Ordinance or the Comprehensive Plan.
In making its finding the Board must consider such issues as ingress and egress to the lot — with particular attention to traffic flow and access by emergency vehicles — parking, and the effect of noise, glare and odors on neighboring properties. Ordinance § 907.A(2)(c). The Board must also consider issues of trash disposal, utility access, screening and buffering of the lot, signage, any required open space, and general compatibility with lots in the same zoning district. Id. To that end, the Board issued a specific and detailed written decision enumerating its findings of fact and conclusions of law, as well as evidencing the Board's determination of witness credibility where appropriate.
The Board found that Ms. Gobeille's credible testimony established that the scope of the new facility — including the capacity to board up to 28 dogs and 68 cats, provision of pet adoption and counseling services, separate office and meeting space, volunteer training, and limited veterinary service — was essential to the operation of the shelter, as well as required to *Page 14 
comply with new regulations proposed by the Rhode Island Department of Environmental Management. The Board also concluded that granting the special use permit would not alter the general character of the surrounding area or impair the intent and purpose of the Zoning Ordinance and the Comprehensive Plan of the Town.
In support of these conclusions, the Board made multiple findings of fact: that the proposed building is compatible with the residential usage of other properties in the area, that it was consistent with the Zoning Ordinance and Comprehensive Plan, and that granting the special use permit would not substantially and permanently injure the appropriate use of the property in the surrounding area. The Board made specific reference to witnesses that testified at Board hearings and the decision reflects the Board's determination of their credibility. The Board especially relied on the testimony of Ms. Gobeille, Mr. Lachowicz, and Mr. Godfrey, as the Board found these individuals to be credible and persuasive. The Board also explicitly found that the new facility would not cause significantly increased traffic, that emergency access will be available and that there will be sufficient parking.
The Board further found that the proposal provided for adequate trash and sewage disposal, as well as storm water drainage. The Board noted that appropriate exterior lighting will be utilized and screening and buffering of the lot will help to maintain the character of the area by reducing the facility's visual and aural impact. The Board also found that credible expert testimony showed that approval of the special use permit would not harm the value of surrounding property.
In addition, the Appellants did not present any expert testimony to refute the conclusions of the ARL's experts. While the Appellants presented Edward Pimentel as an expert planner, the Board discounted much of his testimony as it consisted of legal argumentation outside Mr. *Page 15 
Pimentel's area of expertise. As to his opinion that the proposal was inconsistent with the Ordinance and South Kingstown's Comprehensive Plan, the Board found that Mr. Pimentel was not a credible witness as his opinion was not based on any specific facts and he had neither been inside the ARL's current facility nor had he looked at the floor plans of the proposed facility.
While each side presented expert testimony on the issue of consistency with the Ordinance and the Comprehensive Plan, this Court must engage in only limited judicial review. Mendonsa v. Corey, 495 A.2d 257, 263 (R.I. 1985) (holding that the trial court may not substitute its judgment for that of a zoning board which had the witnesses before it and had the opportunity to judge their credibility). The Board, not this Court, heard the testimony of all the witnesses and is in the best position to judge their credibility and resolve conflicts among the testimony.Id. Here, the Board found the witnesses for the ARL to be credible and resolved the conflicting testimony in the ARL's favor. This type of determination is wholly within the realm of the Board's authority and will not be disturbed by this Court.
A large number of neighbors also testified in opposition to the proposal, sharing the opinion that construction of the new facility would lower their property values.[9] Although this testimony conflicted with that of the ARL's experts who stated that property values would not be affected, the Board did not recognize any of the neighboring property owners as an expert on real estate values. It is well-settled in Rhode Island "that the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." Salve Regina v. Zoning Board of Review,594 A.2d 878, 881 (R.I. 1991) *Page 16 
(quoting Toohey v. Kilday, 415 A.2d 2d 732, 737 (R.I. 1980)). Thus, there was no expert testimony to refute that provided by the ARL on the issue of the proposal's effect on property values. The Board found that the ARL's witnesses, in particular Mr. Lachowicz and Mr. Godfrey, were credible and thus chose to give weight to their opinions as to the impact on surrounding property values. See Restivo v. Lynch,707 A.2d 663, 671 (R.I. 1998) (stating that expert testimony "may be accepted or rejected by the trier of fact"). Again, this is a determination within the province of the Board and will not be disturbed by this Court.
In sum, a thorough review of the record reveals that the Board's findings are based on the substantial evidence contained in extensive testimony and documentary evidence submitted over the course of three public hearings at which both the ARL and the Appellants were ably represented by counsel. The witnesses were subject to cross examination and the repeated questioning of the Board members themselves, providing the Board with ample grounds to make its credibility determinations. The record of the Board's subsequent deliberations shows that Board members considered the concerns of the objecting neighbors and granted a permit that the Board felt would serve the needs of the ARL while also maintaining the general character of the surrounding area.
This Court is satisfied that the record contains substantial evidence supporting the Board's decision as the multiple expert witnesses certainly provided the Board with significantly more than a scintilla of evidence. The Board chose to rely on the substantial evidence presented by the ARL, and none of its findings is clearly erroneous. As such, this Court will not substitute its judgment for that of the Board. The Board's decision is therefore affirmed. *Page 17 
 Conclusion
For all of the foregoing reasons, the decision of the South Kingstown Zoning Board of Review, granting the Animal Rescue League of Southern Rhode Island a special use permit, is affirmed. This Court finds that the Board was specifically authorized to grant a special use permit pursuant to the South Kingstown Zoning Ordinance §§ 200.E and 907.C and did not act in excess of its statutory authority or in violation of Ordinance provisions. Furthermore, this Court is satisfied that the Board's decision to grant a special use permit was supported by substantial evidence and is therefore not clearly erroneous, arbitrary and capricious, or an abuse of discretion. Substantial rights of Appellants have not been prejudiced.
Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] The transcript of the hearing indicates that the facility was opened in 1961. Examining the record as a whole, this Court finds that this date must either be a typographical error or a misstatement by the witness as the record is clear that the ARL was granted a special exception to conduct its operations in 1969, with the facility opening shortly thereafter.
[2] Mr. Godfrey neglected to specify the specific location of Tiptop kennels — neither was this information on cross-examination or in questioning by the Board members — but he did mention that the subdivision in which the kennel is located is known as South Woods Estates and that some of the surrounding uses include the Peacedale Shooting Preserve, a landfill, and agricultural and industrial uses.
[3] Erick Lindewall, Robert Desilets, Louis Quigley, Anne Healey, Raymond Christian, David Bader, Steve Liebermensch, Michael Cabral, Michelle Cabral, Erin Erni, Howard Rubin, William Lobdella,, Jeff Collins, Jeff Finan, Eric Turell, Gerik Girard, and Betty-Lou Quigley all provided testimony.
[4] Although not raised below, this Court notes that it could be argued that while the ARL has proposed to build a substantially larger building, it has not proposed to substantially alter or expand its actual use of the property. When a landowner's use is pursuant to a special use permit, it is not necessary to apply for a further special use permit where the expanded use "is of the same character as that granted in the prior exception but would not substantially intensify the use." Warner v. Board of Review of the City of Newport, 104 R.I. 207,211, 243 A.2d 92, 94 (1968). This is "for the reason that the owner of the land, by virtue of the first exception, has become entitled as of right to make such a use of the land and retains that right so long as that use is not so intensified as to become contrary to the public interests which justify the exercise of the police power" in allowing such use. Id. Given this Court's disposition of the underlying issues, it will assume without deciding that the ARL's proposal does in fact constitute a substantial intensification of its use of the property.
[5] Special exceptions are now referred to as "special uses."
[6] Appellants argue in the alternative that the ARL's use of its property constitutes a nonconforming use, expansion of which is subject to different restrictions under the Ordinance. Because of this Court's resolution of the special permit issue, it is unnecessary to reach this argument.
[7] While not at issue below, this Court notes that the result dictated by the Ordinance is consistent with State law regarding the issuance of special use permits and alteration of nonconforming development. Rhode Island General Laws 1956 § 45-24-31(49) sets forth a two part definition of "nonconformance," defining it as "[a] building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment." Here, the ARL's use is not nonconforming. Its use does not satisfy the second part of the statutory definition as the provisions of the Ordinance specifically contemplate and provide for the ARL's use in that a use established by special use permit will not become a nonconforming use regardless of any later amendment to the Ordinance. Ordinance §§ 200.E and 907.C. As such, G.L. 1956 § 45-24-40 — which states that a nonconforming use established by special use permit can not apply for a further special use permit authorizing alteration or expansion — is inapplicable here. Rather, the provisions of G.L. 1956 § 45-24-42, governing the issuance of special use permits, control this case.
[8] Appellants also contend that the requirement that the Board find "[t]hat the special use meets all of the criteria set forth in the subsection of this Ordinance authorizing such special use" pursuant to § 907.A(2)(b) was not met because no criteria are set forth in §§ 200.E and 301. This argument is wholly without merit. Forty-six special uses that do not contain any additional criteria appear in § 301. Under the Appellants' reading of the Ordinance, none of these forty-six uses could ever receive a special use permit as they are unable to fulfill the nonexistent additional requirements found in the Schedule of Uses. This Court will not interpret the Ordinance to create such an absurd result.See Jeff Anthony Properties v. Zoning Board of Review of the Town ofNorth Providence, 853 A.2d 1226, 1230 (R.I. 2004).
[9] Several also stated that they had not expected the ARL to ever apply for a permit to build such a large facility on their property. However, the fact that neighboring property owners may have relied on the zoning is not a valid objection because "[e]very residential zone in any community is subject to the possibility of exceptions contained within the local ordinance adopted pursuant to the enabling act."Bergson Co. v. Zoning Bd. of Review of Woonsocket, 92 R.I. 226, 231,167 A.2d 844, 847 (1961).